## WRIGHT v. McALEXANDER.

1. A contract, by which the use of slaves is allowed as a compensation for the interest of money, is not on its face usurious, but will be so, if intended as a shift, or device, to obtain unlawful interest.
2. Such a contract cannot afterwards be converted into a mortgage by the borrower, so as to require the lender to account for the hire of the slaves, if that exceeds the legal rate of interest.

Error to the Chancery Court of Huntsville.

The bill was filed by the plaintiff in error, and alledges, that in the year 1837, having three slaves, a woman and two children, conveyed in trust to secure a debt to one Pruitt, and which were about being sold, the defendant in error advanced the sum for which the slaves were conveyed, and agreed to receive the services of the slaves as an equivalent for the use of the money. That thereupon, complainant executed an absolute bill of sale for the slaves to him, but with the distinct understanding that she should have the privilege of redeeming them when she could refund the money. Some short time afterwards, she put into the defendant's possession a negro girl, upon the same terms, and received an advance thereon of one hundred and twenty-five dollars. The prayer of the bill is, that the complainant be allowed to redeem, that an account be taken of the hire, &c.

The defendant, by his answer, denies the allegations of the bill, and sets up a title to the slaves.

The proof taken in the cause satisfied the chancellor of the truth of the allegations of the bill, and he directed an account, to ascertain the present value of the slaves; which being ascertained by the master, he farther directed, that if upon a tender made to the defendant of the sum advanced upon the slaves, they were not delivered to the complainant, an execution should issue for their value, as ascertained by

the master. He refused to order an account to ascertain the value of the hire of the slaves.

From this decree the complainant prosecutes this writ, and assigns for error the refusal of the chancellor to allow hire upon the slaves.

McClung, for plaintiff in error.

No counsel apppeared for the defendant in error.

ORMOND, J.—The objection made to the decree of the chancellor is, that the defendant should have been charged in the account with the difference between the value of the hire of the slaves, and the interest of the money advanced upon them.

The case made by the bill is, that the complainant agreed to allow the defendant the use of the slaves, as an equivalent for the interest of the money advanced by him. It is now contended, that this contract is usurious. We do not doubt, that if this shape was given to the contract, for the purpose of evading the statute of usury, it would be void, as no shift, device, or contrivance, will be available for that purpose the intention being to secure unlawful interest. But there is no such allegation in the bill, and in our opinion the contract as there set out, is not on its face usurious.

To constitute usury, there must be a certainty of receiving more for the use of money, than legal interest. If there is a hazard of losing, so that the lendor may receive less than legal interest, or lose the principal, the contract is not *per se* usurious, but may be declared so, if the contract was a mere device to evade the statute. The law was thus declared in the great case of Chesterfield v. Janson, 1 Wilson, 286, argued before Lord Hardwicke, and all the Judges. That was the case of a man thirty years of age, borrowing £5,000 and executing his bond to pay the lender £10,000, within a month after the death of the Duchess of Marlborough, his grandmother, in case he survived her, she being at the time seventy-eight years of age. He survived the Duchess, and the court held the contract not to be usurious, but valid, upon the principles above stated. The case has been repeatedly recognized since, and is the established law at the present

day. [Darones v. Green, 12 Meeson & W. 489; Thorndike v. Green, 11 Pick. 184; Hall v. Haggart, 17 Wend. 280.]

The facts of this case bring it within the influence of these principle. The slaves were, most of them small children, and all were liable to sickness, and death; there was therefore a risk to be encountered, and a possibility of losing both principal and interest. We are aware that the Kentucky cases cited on the brief of the plaintiff in error, do not take this view of the law, but it is to be observed that in both the cases cited from 3 Bibb, 207, and 4 Bibb, 327, the facts were much stronger than in this case, to authorize the inference that the form of the contract was a mere disguise, to obtain usurious interest, and in both, the question of usury was made, for the purpose of avoiding the contract for that cause. What is said upon this question in the case of Hamer v. Harrell, 2 S. & P. 323, was not necessary to the decision of the case, and so admitted in the opinion of the court. It is not therefore entitled to the weight of an adjudged case.

In the case of a pure pledge, to which this contract bears more resemblance than any other, the law seems to be somewhat uncertain, as to the right of the pledgee to use the thing pledged, without accounting to the pledgor for the value of such use. In Coggs v. Bernard, Lord Holt, speaking of this species of bailment, says, if a horse be pawned, the pawnee may use the horse, if he be at charge in keeping him. [1 Bac. Ab. 379, Chancellor Kent, appears to think, he should apply the profits, if any are made, to the benefit of the pawnor. [2 Kent's Com. Lec. 40.] And see also the subject discussed by Mr. Justice Story, in his work on Bailments, c. 5, 220.] But however this may be, in the case of a pure pledge of a slave, for the payment of a debt, here there was a special contract, that the use of the slave should be a compensation for the use of the money. Where such a contract is entered into *bona fide*, and is not a pretext resorted to as a cover for usury, it appears to us, contrary to the first principles of justice, to permit the borrower to suffer the pawn to remain in the hands of the pawnee, until the use has not only extinguished the loan, but also brought the pawnee largely in debt, and then insist on considering it a mortgage. Although it is true the defendant could have terminated this

contract at any time by demanding his money, yet the complainant had the same right of regaining the possession of her property, by paying the sum borrowed, and until she elected to put an end to the contract, he had the right to consider it as still continuing. For these reasons, we think the chancellor did not err in refusing to allow hire for the slaves.

Let the decree be affirmed.