HORACE A. GOODRICH *et al.*

*v.*

HENRY ROGERS *et al.*

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. USURY—*money advanced—reserving a share of profits and sharing in losses.*  Where a party advances to another capital with which to engage in business in the name of the former, under an agreement that the party carrying on the business is to receive $50 per month, and each is to receive one-half of the net profits, subject to losses, the transaction is not usurious, though the lender may thereby in fact receive more than the rate of interest allowed by law to be reserved, on his advance, as he takes the hazard of a loss from the business.

2. Where a loan is made and the lender receives a share of the profits in an adventure, which is greater than the legal rate of interest, but is responsible for losses, the transaction is not usurious, though it might be so regarded if he were not liable for losses.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. F. W. FORCH, JR., and Mr. WALTER G. GOODRICH, for the appellants, after stating the facts of the case, made among others the following points:

1. The circumstances, the conduct of the parties, and the business, the terms and language of the contract, prove this to have been a sale, notwithstanding the asserted understanding of Smith and Knight that it was a loan. *Price* v. *Karnes*, 59 Ill. 276; *Pitts* v. *Cable*, 44 id. 103; *Hanford* v. *Blessing*, 80 id. 188; *Colton* v. *Dunham*, 2 Paige, 267.

The essential elements of a loan are wanting in this case. In the case of *Murray* v. *Harding*, 2 Wm. Black. 860, the chancellor says: "It is essential to the nature of a loan that the thing borrowed is at all events to be returned." *Hall* v. *Daggett*, 6 Cowen, 653; Tyler on Usury, 98, 172; Ord on Usury, 23.

The payment of the money alleged to have been borrowed being at the will of Smith, and not obligatory on him, one of the essential elements of the loan is wanting in this contract.

2. If the transaction can be construed as a loan, it was not usurious. There is no contract to pay illegal interest. If the principal and interest be put at hazard, there can be no usury. Tyler on Usury, 99; 2 Parsons on Notes and Bills, 442; *Colton* v. *Dunham*, 2 Paige, 267; *Spencer* v. *Tilden*, 5 Cow. 144; *Holmes* v. *Wetmore*, id. 149; *Morisset* v. *King*, 2 Burr. 891; *Cummings* v. *Williams*, 4 Wend. 680; *Stevenson* v. *Unkefer*, 14 Ill. 103.

When one puts money, and the other credits or services, into a business, to be paid for out of the profits only, they are partners; and in a partnership there can never be usury, however great a share may be allowed one partner for what he contributes, because the return is contingent upon profits,

and the loss of his contribution is hazarded by his liability for. the debts. *Robbins* v. *Laswell*, 27 Ill. 365; *Grace* v. *Smith*, 2 W. Black. 100; *Leggett* v. *Hyde*, 58 N. Y. 272.

Messrs. McCONNELL, RAYMOND & ROGERS, for the appellees:

1. The court can look beyond the color and form of the transaction to determine its character. *Lawley* v. *Hooper*, 3 Atk. 278; *Robinson* v. *Cropsey*, 6 Paige, 480; *McGill* v. *Ware*, 4 Scam. 21; *Bishop* v. *Williams*, 18 Ill. 101; *Sutphen* v. *Cushman*, 35 id. 186; *Cooper* v. *Knoch*, 27 id. 301; *Reinback* v. *Crabtree*, 77 id. 182; *Mitchell* v. *Preston*, 5 Day, 100; *Koyer* v. *Edwards*, Cowp. 114.

2. Granting that there was no stipulation to return the money, the transaction was usurious. A stipulation that the money may be returned is sufficient. Tyler on Usury, 96, 101; *Scott* v. *Lloyd*, 9 Pet. 418; *Lawley* v. *Hooper*, 3 Atkins, 278; *Mitchell* v. *Preston*, 5 Day, 100; *Robinson* v. *Cropsey*, 6 Paige, 480.

3. Even if the court should consider that the transaction made Goodrich liable for the debts, it was usurious. Hazard must be more than colorable. The contingent insolvency of the borrower is no hazard. Contingent liability for the debts, if the borrower stands between the loaner and the creditors, is no sufficient hazard. *Morse* v. *Wilson*, 4 T. R. 353.

4. A division of profits does not necessarily constitute a partnership, and subject a person entitled to share in them to a liability to creditors. A share of profits may be taken as compensation for service, or for use of money. *Lintner* v. *Milliken*, 47 Ill. 178; *Adams* v. *Funk*, 53 id. 219; *Burton* v. *Goodspeed*, 69 id. 237; *Smith* v. *Knight*, 71 id. 148; Parsons on Partnership, 72; Story on Partnership, sec. 49; *Harvey* v. *Childs*, 28 Ohio St. 319; *Campbell* v. *Dent*, 54 Mo. 325; *Rice* v. *Austin*, 17 Mass. 197.

5. If the profits of a business, or the use of a pledge, amount to more than legal interest, the transaction is usuri-

ous. *McGinnis* v. *Hart,* 4 Bibb, 327; *Richardson, Admr.* v.
*Brown,* 3 id. 207; *Morse* v. *Wilson,* 4 T. R. 353; *Galloway*
v. *Legan,* 4 La. (N. S.) 167; *Succession of Lavinia Hickman,*
13 La. Ann. 134.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

In April, 1878, Rogers and Smith owned a stock of drugs
and the fixtures of a drug store, and were engaged in busi-
ness on South Clark street, Chicago. The firm was badly
involved, and unable to pay its liabilities. On the 20th of
April a judgment by confession for $1021 was rendered
against the firm, in the Superior Court of Cook county, in
favor of John B. Knight, Jr., on a note which had been
indorsed to him by J. G. Rogers. An execution was issued
on the judgment, and levied on the entire stock and fixtures,
which on the 18th day of May were sold, and bid off by
Knight. It appears that the store and fixtures were removed
to the Grand Pacific building, and the business there carried
on by Smith, as Knight's agent. While the property had
been purchased by Knight, and was held in his name, it
appears from the evidence that he only held it as security
for a debt of some $800 due his father from the firm.

On or about the 18th day of January, 1879, an arrangement
was made between Smith, Knight, and Walter G. Goodrich,
under which the property was transferred to Goodrich, and
Knight received his pay. This transfer was made by a
written bill of sale, which was executed by Knight, and
passed over to Goodrich. At the same time a written con-
tract was made between Goodrich and Smith, under which
Smith agreed to carry on the store for one year, for $50 per
month and fifty per cent of the net profits of the business.
The agreement also provided that at the end of the year
Smith had the privilege of purchasing the business, stock of
drugs, and fixtures, by paying $1500 over and above the profits
for said year. After the making of the bill of sale and the

last named agreement, the business was carried on in the name of Goodrich, Smith acting as clerk or agent.

The terms of the contract under which Knight transferred the property to Goodrich are in dispute between the parties. Rogers and Smith claim that Goodrich agreed to loan them $1500 for one year, and he was to receive one-half of the net profits as interest on the money loaned, and that the bill of sale was executed by Knight, at their request, as security for the loan, while on the other hand Goodrich claims that he refused to make a loan, but that he purchased the property for $1500, and at the same time agreed with Smith to employ him to carry on the business, under his supervision, for one year, and to pay him a salary of $50 a month and one-half of the profits, and give him the privilege of purchasing the property for $1500 at the end of the year.

The first question to be determined is whether the transaction between the parties is to be regarded as a loan, and this question is not free from doubt. Knight made an absolute sale of the property to Goodrich, which was proven by a written bill of sale, absolute in its terms. Goodrich testified that he refused to make a loan, and never in fact made a loan, but purchased the property for the sum of $1500. In addition to this evidence, there was no contract or agreement by which Rogers and Smith, or either of them, ever agreed, at any time or in any event, to repay Goodrich the money he advanced. Smith, it is true, had the right, at the end of one year, to repurchase the property upon the payment of $1500, but he was under no obligation whatever to do so unless he saw proper. On the other hand, Smith testified that Goodrich, after refusing a chattel mortgage and personal security, made this proposition: "That if I would give a bill of sale as security for the loan, he would make the loan, provided I would allow him one-half of the net profits as interest on the money. He might not have used the word interest, but he said if I would give him a bill of sale he would

advance me $1500, that I was to have, and he was to have one-half of the net profits." Knight, in his evidence, says: "I have heard a good deal of talk about it. I got the impression—I don't remember the absolute words—but I got the impression all through that it was a loan." This is the substance of the evidence bearing on the question whether the money furnished by Goodrich can be regarded as a loan, and it leaves the point in much doubt.

But conceding that the transaction was a loan of $1500 made by Goodrich to Rogers and Smith, the inquiry then is whether the contract was usurious. The circuit court held that it was, and this decision was affirmed in the Appellate Court. The substance of the contract is this: Goodrich furnished $1500 and purchased the stock of goods and fixtures. He agreed to give Smith $50 per month and one-half of the net profits of the business to carry on the store for one year, in the name of, and on the credit of, Goodrich. Upon the expiration of one year Smith had the right to purchase the property by paying $1500 over and above the profits of the business. There is no pretence that this contract is usurious on its face. Indeed, it does not provide for the payment of any interest whatever, nor for the principal sum advanced, but the argument is, as we understand it, that one-half of the profits arising from the business, which, under the contract, would go to Goodrich, exceeded in amount ten per cent interest on the $1500, and hence the agreement was within the statute in force at the time the contract was made, which prohibited a person from receiving any greater sum than ten per cent for the loan of money. It is true that one-half of the profits arising from the business exceeded ten per cent on the $1500 which Goodrich advanced for the goods, but does that constitute usury, within the meaning of the statute?

In disposing of this question it must be remembered that the $1500 advanced by Goodrich was not actually at interest,

but employed in business where it might make profits or suffer losses. We do not understand that our statute was ever intended to prevent one person from furnishing capital to another with which the two might embark in trade, although the person advancing the capital might receive profits greatly in excess of the rate of interest allowed by law. In such a case, where he takes the hazard of losses arising from the business, there can be no usury. This principle is well expressed in *Anderson* v. *Maltby*, 2 Ves. Jr. 248, in these words: "An advantage to be taken out of trade may be measured in any way agreed on, for the money is not lying at interest, but employed in making profits, subject to losses." Here, Goodrich embarked in a new adventure,—in a speculation,—which might prove profitable or might result in heavy losses. The business was carried on in his name. Whatever loss might ensue he was responsible, although it might consume the money advanced and as much more. Under such circumstances we fail to see how it can be said any rate of interest whatever was reserved. It may be conceded that if the lender should receive a certain share of profits of a business, exceeding the legal rate of interest, and was not liable for losses, the contract might be regarded usurious, as held in *Morse* v. *Wilson*, 4 T. R. 353. But where a loan is made, and the lender receives a share of the profits which is greater than the legal rate of interest, but is responsible for losses, the transaction can not be held usurious. *Morisset* v. *King*, 2 Burr. 891.

*Hall* v. *Daggett*, 6 Cowen 655, is a leading case on this subject, where it is expressly held that a contract can not be held usurious where the lender is liable for the losses incident to the business. In *Stevenson* v. *Unkefer*, 14 Ill. 103, where it was contended that a note payable in Baltimore bank notes, with twelve and one-half per cent interest, was usurious, it was held that where the creditor takes a risk by which he runs the hazard of losing the principal sum, or of taking

34—101 ILL.

less than the sum originally due, with lawful interest, it is not usurious to stipulate for or receive more interest than is prescribed by the statute. The same principle was decided in *Spain* v. *Hamilton's Admr.* 1 Wall. 604, in which it was held that where the promise to pay a sum above legal interest depends upon a contingency, not upon any happening of a certain event, the loan is not usurious.

Here there can be no question in regard to the fact that Goodrich took the risk of not only losing all interest, but the principal sum advanced as well. Whether he would ever receive a dollar in return for the money advanced, depended entirely upon the success of the business. If the adventure proved profitable, he might receive a legal rate of interest, or even more, from the profits. If, on the other hand, the business was not well managed, or goods declined in the market, or bad debts were made, he might receive nothing whatever, either as interest or principal. Where such a contingency exists, the transaction can not be held to be tainted with usury. The law of the State which prohibits the loaning of money at a high rate of interest was doubtless enacted for a wise purpose, and when enforced in cases which fall within its provisions, it may work beneficially to all classes of society; but to hold that the facts of the present case fall within the provisions of the statute, would in many cases prevent men with good business capacities from obtaining money to engage in business from those who had capital to advance, provided they could share in the profits of the enterprise. Such a decision in our judgment, might have a direct tendency, in many cases, to stifle business and retard the commercial interests of the country.

The decision of the Appellate Court will be reversed, and the cause remanded, with directions to reverse the decree of the circuit court.

*Decree reversed.*

Mr. JUSTICE MULKEY:   I do not concur in the conclusion reached in this case by the majority of the court.   I am of opinion the transaction was a mere subterfuge to cover usurious interest, and that the judgment of the Appellate Court should therefore be affirmed.

Mr. JUSTICE DICKEY:   I agree with Mr. JUSTICE MULKEY. The written contract was not the real agreement of the parties.   If it were, it was not the case of a loan.   The writing, I think, was a mere device to cover the real transaction, by which the lender was to receive his principal, and for the use —a larger amount for its use than the law allows.

Mr. JUSTICE WALKER:   I do not, under the facts in this case, think this was intended as a loan, and hence is not obnoxious to the usury laws.   Had this form been adopted as a mere cover for usury, it would have been otherwise. But I think that is not shown.