# Rapier *v.* Gulf City Paper Company.

# Gulf City Paper Company *v.* Rapier.

*Bill in Equity by Assignee of Newspaper Establishment, for Account, Receiver, Redemption, etc. ; Cross Appeals.*

1. *Mortgage, or conditional sale ; construction of conveyance.*—An instrument can not operate as a mortgage, and at the same time as a conditional sale ; and when it contains repugnant provisions, rendering its character doubtful, it will be construed as a mortgage rather than as a conditional sale.

2. *Same.*—The existence of a debt, which had been reduced to judgment, and the preservation of which, with its execution lien on the property conveyed, is expressly provided for in the instrument, with the right to levy on any other property of the debtor, if the debt is not paid in installments as specified, stamps the character of the instrument as a mortgage, although it is called a " bill of sale," and although it declares that the grantee " becomes in all things the absolute owner of said property, the said party of the first part having only the right to re-purchase the said property upon the consideration and conditions named."

3. *Usury in mortgage ; stipulations construed.*—A provision in a mortgage for the payment of $2,500 within thirty days, " and securing to be paid " in installments, " as hereinafter stated, all debts that may at the time be due to said party of the second part from the party of the first part, with the interest thereon, and all reasonable costs, charges, fees and expenses," does not, *per se*, render the mortgage usurious ; the stipulation being susceptible of the construction, that the $2,500 was to be a partial payment on the debt, and not as a *bonus* in addition to it.

4. *Same.*—The mortgaged property consisting of a newspaper office, with job-printing office attached, which had been conducted at a loss by the mortgagors, the mortgage is not rendered usurious by a stipulation that the mortgagee shall not be liable " for any profit or revenue he may derive from the use of the property."

VOL. LXXVII.

APPEALS from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

This case has been before this court on two former appeals, and is reported in 64 Ala. 330-45, and 69 Ala. 476-82. The original bill was filed on the 15th May, 1877, by the Gulf City Paper Company, against John L. Rapier, Joseph Hodgson, the personal representative of John Forsyth, deceased, and several other persons who held or claimed some lien upon or interest in the printing establishment known as the *Mobile Register* office; and sought the appointment of a receiver to take charge of the property pending the suit, an account, a foreclosure of the several mortgages and other liens prior to the complainant's claim, and the enforcement of the complainant's rights as a purchaser under an instrument of writing, a copy of which was made an exhibit to the bill, and which was in these words:

"The State of Alabama, } For and in consideration of Mobile County. } $5,035 to us in hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, we, John Forsyth, John L. Rapier and Joseph Hodgson, parties of the first part hereto, do hereby bargain, sell, assign, transfer, set over and deliver to the Gulf City Paper Company, the party of the second part, the property known and described as the *Mobile Daily and Weekly Register* newspaper, and all the property and materials in and belonging to the printing establishment thereof, and of the job-printing and book-binding establishment, and of the offices connected therewith, with the rights, contracts and privileges attaching thereto, and including the property mortgaged by said Forsyth to E. B. Lott, trustee, &c., and also to C. K. Foote, L. Brewer and A. Proskauer, trustees to secure certain bonds, and including the property levied on and now held by the sheriff of Mobile county, under an execution and *vend. ex.* issued on a judgment obtained by said Gulf City Paper Company, in Mobile Circuit Court, against said Forsyth and Rapier: *And whereas*, said company did, at the Spring term, 1876, of said Circuit Court, obtain judgment against said Forsyth and said Rapier, for the sum of $5,000, with costs of suit, and an execution therefor, which is a lien on said property; and after the said execution Hodgson purchased from said Forsyth a half of his interest in and to said property: *And whereas*, the sheriff, under said execution, did duly levy, and advertise said property for sale to satisfy said judgment and execution, on Thursday, November 30th, 1876: *And whereas*, said sale was, by agreement, postponed until Thursday, the 14th day of December, and, on the return of the execution, a *vend. exponas* duly issued to sell said property so levied on: *And whereas*, said sale was again postponed, until this day: *And whereas* said property is in-

cumbered with a mortgage, and, if sold at sheriff's sale, would not bring more than, if as much as said judgment: *And whereas*, all parties concerned deprecate the public sale of said property, as being injurious to the future interest of said newspaper, by whomsoever conducted or owned : *And whereas* there is no legal right of redemption of said property, if sold : *And whereas* the sale and transfer of said property herein made is to the interest of all, and to the prejudice of none of the parties concerned : *It is agreed* between the parties, that the said party of the second part, upon the payment to it, within thirty days from these presents, of $2,500 in cash, and the securing to be paid, as hereinafter stated, all debts that may at the time be due it from said parties of the first part, or any of them, together with the interest thereon, and all reasonable costs, charges, fees and expenses, paid or incurred by said company in and about obtaining said judgment, or arising therefrom, and of the execution, levy, and *venditioni exponas*, postponements of the sale, and of the execution of necessary papers between the parties, and the principal and interest, if any such, paid or incurred by said second party on account of any other or prior judgment to theirs ; all of which are to be secured by good and approved securities, to be paid in three equal installments, at two, four, and six months ; then the said party of the second part will forthwith sell, and re-transfer and deliver to them, the said first parties, for and upon the said consideration, and according to their respective interests, the property herein sold, transferred and delivered, by the first to the second parties hereto, or such portion thereof as may at the time be in existence. Or, if said first parties shall pay said $2,500 within the said thirty days, and shall make payment of the other sums, in the installments, and at the times above provided ; thereupon, the last of said payments so being made, the said company will sell, transfer, and deliver said property as aforesaid. It is further understood and declared, that the said company does by this bill of sale become in all things the absolute owner of said property, and not liable in any way to account to or with the said first parties, for or on account of the use of said property, or for any profit or revenue that may be derived therefrom ; the said first party having by these presents only the right to re-purchase the said property, for the consideration, and upon the conditions named. And the said second party is hereby authorized and empowered to take and collect the outstanding book-accounts and credits of the firm of John L. Rapier & Co., and to pay and settle the current debts of the newspaper and office, and of the firm, and shall account therefor to and with said firm, or the members thereof, in reference to said collections and settlements, as shall be agreed. And the said first

parties do hereby covenant, to and with the said second party, that said property is free from any incumbrance made or suffered by them, or any of them, excepting the deed of trust, or mortgage, executed by said Forsyth to C. K. Foote, Leroy Brewer and A. Proskauer, trustees.   And it is agreed, that said company shall not lose or forfeit any lien or right that it may have secured, to have the said judgment satisfied by a sale, under *venditioni exponas* or execution, of said property hereby sold and transferred, or of any other property ; and it is agreed that the said sale may be adjourned from time to time, at the instance of the said company, or a new execution be sued out on its judgment, or both.   And it is agreed, also, that until the re-purchase of said property by the first party, upon the above agreed terms, or until seven months after the date hereof, said judgment shall be and remain valid and effective for all purposes, as a subsisting security to said second party, for a complete and perfect title to said property herein conveyed, and for the undisturbed possession thereof for the said time mentioned, against any one claiming by, through, or under any of said first parties, or in privity therewith, or by any one on account of any thing done or suffered by said parties, or either of them. In testimony whereof," &c.   (Dated December 18th, 1876, and signed by said Forsyth, Rapier, Hodgson, and the acting president of said company.)

The original bill claimed that the building in which the *Register* newspaper and printing business was carried on, and the title to which had been in the name of said Rapier individually, or some interest therein, was conveyed by said instrument to the complainant; but this court, on the first appeal (64 Ala. 330), held that this claim was unfounded ; and the bill was then amended, by striking out all the allegations and prayer in reference to this property.   It was further held on that appeal, that the only equity of the bill was in the complainant's right, under the instrument above copied, to have the several liens and prior incumbrances on the property adjusted, and the property sold to satisfy them.   An amended bill was then filed, in which the complainant claimed the right to redeem as a judgment creditor; and that aspect of the case was passed on by this court, on appeal from the chancellor's decree overruling a demurrer to the bill as amended.—69 Ala. 476.   The former reports of the case contain full statements of the material facts as then presented, but which are not necessary to an understanding of the questions arising on this appeal ; nor is it necessary to state any facts connected with the prior liens and mortgages referred to in the instrument above copied.

Rapier filed a demurrer to the original bill, assigning as ground of demurrer, among other things, that the written in-

strument was a mortgage, while the complainant claimed relief as an absolute purchaser; and he afterwards filed a plea, alleging usury in the debt secured by it. The cause being again submitted, on the demurrer, pleadings and evidence, the chancellor held that the instrument was a mortgage, and that the complainant was entitled to have it foreclosed under the general prayer for relief; but he held that it was not usurious on its face, and that the defense of usury was not sustained. Each party appeals from this decree, and each here assigns error; the complainant, that the chancellor erred in holding the instrument to be a mortgage, and not a conditional sale; and Rapier, that he erred in holding that the defense of usury was not sustained.

CLARK & CLARK, and R. H. CLARKE, for the complainant. (1.) The conveyance is, on its face, not a mortgage, but a conditional sale, or a sale with condition annexed allowing a repurchase, which has now become absolute by non-performance of the condition. It contains many characteristics of a bill of sale, as it is termed on its face, and none of the characteristics of a mortgage. When analyzed, the instrument may be divided into eight parts, or sections: 1st, a sale or conveyance of the property; 2d, a statement of the judgment, which was the consideration of the transfer; 3d, a statement of the reasons why a private sale was preferred, rather than a public sale under the execution; 4th, a statement of conditions upon which the property might be re-purchased, providing two modes; 5th, an explicit declaration that the instrument is intended as a bill of sale, and that only a right or election to re-purchase is left in the transferrors; 6th, authority to the purchaser to collect the outstanding accounts of Rapier & Co., pay certain debts, and account to the firm or its members; 7th, warranty as to incumbrances; and, 8th, preservation of judgment for seven months, as security for title and possession. The first section is apt and appropriate for a sale, whether absolute or conditional; whereas, in a mortgage, it should be followed by words of defeasance, unless the defeasance is written on a separate paper.—Jones on Mortgages, vol. 1, §§ 69, 277; *Peebles v. Stolla*, 57 Ala. 53; *Logwood v. Hussey*, 60 Ala. 417; *Sewell v. Henry*, 9 Ala. 24; *Bryan v. Cowart*, 21 Ala. 92. The recitals of the second and third clauses, which are to be taken as true, are natural explanations of a sale, but are singularly inappropriate for a mortgage. The transferrees, armed with an execution which had been levied on the property, might with reason desire to recite the facts which would show that the transaction was fair; but, while the recitals show good reasons why a private sale should be preferred, they suggest no reasons for taking a mortgage. The

[Rapier v. Gulf City Paper Co.]

fourth clause binds the transferree to re-sell, but contains no clause binding the transferrors to re-purchase; and this is one of the principal characteristics of a conditional sale.—*Logwood v. Hussey*, 60 Ala. 417; *Beck v. Blue*, 42 Ala. 32. The fifth clause is an explicit declaration of the character of the instrument and the intention of the parties; and the court is bound to enforce the contract of the parties as thus expressed, in the absence of averment and proof of fraud or mistake.—*Haynie v. Robertson*, 58 Ala. 39; cases cited in 2 Brick. Digest, 271, §§ 316-17. The sixth clause is explained by the fact, that the purchaser of the property could collect the outstanding debts to better advantage than the outgoing vendors, who abandoned the field as ruined debtors; and they could complete unfinished contracts for advertising, subscriptions, &c., which could not be collected until completed. The provision for the application of the surplus proceeds of collection is utterly repugnant to the idea of a mortgage. The warranty against prior incumbrances is persuasive to show that a sale was intended, and is an unusual provision in a mortgage, being useless and inoperative. The eighth clause provides for the preservation of the judgment for a limited time, not for collection, but expressly for protection; not against the judgment debtors, but against third parties, who might assail the validity of the transaction. The explanation of this clause is to be found in the provisions of the Bankrupt Law, which allowed creditors six months within which to attack a conveyance; and under the practical application of this law, as then administered, it was at least doubtful if the transaction would not be impeached by creditors, as was in fact attempted in their name; and in view of this contingency, it was desirable that the lien of the judgment should be temporarily preserved. Nor was the judgment kept alive, even for this period, unconditionally, but only in the alternative of a failure to comply with the condition for a re-purchase. If no re-purchase had been made, and the property had been destroyed by fire, or other accidental cause, after the expiration of seven months, the grantee's title and possession not having been disturbed; can it be doubted that the loss would have fallen on the complainant, and that the collection of the judgment could not then have been enforced?—*Robinson v. Farrelly*, 16 Ala. 472. In addition to all of these characteristics of a conditional sale, it is to be noted that the instrument is signed by both parties, which is unusual and unnecessary in a mortgage; and it provides that the grantee shall take immediate possession, without liability to account for the use of the property.—Jones on Chattel Mortgages, § 33.

2. The contemporaneous acts and declarations of the parties show that they understood the contract to be a conditional sale,

and so intended that it should operate; that a private sale was simply substituted for a sale under execution. And the pleadings, in effect, admitted the facts showing that this was the intention and understanding of the parties.

3. This question is not concluded by the decision of this court on either of the former appeals, as the chancellor seemed to think; the complainant's rights being the same, on each appeal, whether the instrument was a mortgage or a conditional sale.—64 Ala. 330; 69 Ala. 476.

4. The question of usury does not arise, unless the instrument is held to be a mortgage; and that defense is interposed only by Rapier, who did not plead it until after the cause had been pending for six or eight years. Under these circumstances, the defense should be disallowed, "in furtherance of justice."—Tyler on Usury, 458, 464; *Fulton Bank v. Beach*, 1 Paige, 429; 3 Wendell, 573, 586. If the defense be allowed at all, it is only available to Rapier, and to the extent of his original interest.—*McGuire v. Van Pelt*, 55 Ala. 350; *Cain v. Gimon*, 36 Ala. 168; *Baskins v. Calhoun*, 45 Ala. 582; *Fielder v. Varner*, 45 Ala. 429; Tyler on Usury, 406; 2 Jones Mort. § 1493, note 3. Even if the plea is sustained as to the mortgage so-called, the judgment is unaffected by it.—1 Jones Mort. § 647; Tyler on Usury, 111, 126, 370–71, 401; 2 Bac. Abr., tit. *Usury*, 200; 1 Saund. 295; 10 Amer. Dec. 228, 675; 83 N. C. 211.

5. But the instrument is not usurious on its face. The $2,500, for the payment of which a stipulation was inserted, was not intended as a *bonus* over and above all existing debts; and that construction will not be placed on the clause, if it be reasonably susceptible of any other.—Tyler on Usury, 566. By making the payment within thirty days, the defendants secured an extension of the debt for two, four, and six months; and by giving security for the deferred payments, they could obtain the immediate possession of the property. But, whatever construction be placed on the stipulation, the defendants were not bound to pay the $2,500, but only had an election to do so; and that defeats the charge of usury.—Tyler on Usury, 96, 101, 204; *Call v. Scott*, 4 Call, Va. 402; *Lawrence v. Cowles*, 13 Illinois, 577; *Wilson v. Dean*, 10 Iowa, 432; *Gower v. Gower*, 3 Iowa, 244; *Lloyd v. Scott*, 4 Peters, 225; *Moore v. Hylton*, 1 Dev. Eq. 429; *Thompson v. Jones*, 1 Stew. 553; *Ramsey v. Morrison*, 39 N. J. Law, 591. The business was precarious, and had been carried on by the grantors at a loss: and the grantee undertaking to carry it on at his own risk, the stipulation for the use of the property, without liability to account for any possible profits, does not render the conveyance usurious.— *Wright v. Alexander*, 11 Ala. 236.

[Rapier v. Gulf City Paper Co.]

HANNIS TAYLOR, with whom was P. HAMILTON, *contra.*—1. In the absence of any allegations or proof of either fraud or mistake in the execution of the written instrument, it is the sole memorial of the terms of the contract, and must be construed, " by its four corners."—*Frederick v. Youngblood,* 19 Ala. 680; *Couch v. Woodruff,* 63 Ala. 467; *Williams v. Hathaway,* 19 Pick. 387; *Winston v. Browning,* 61 Ala. 83; *Hogan v. Smith,* 16 Ala. 604. On its face, the instrument contains at least four of the principal characteristics of a mortgage. It shows that the relation of debtor and creditor then existed between the parties; the debtor continued bound for the debt, and express provision was made for its preservation; there was great disparity, as recited, between the value of the property and the agreed price, or the amount of the debt; and the property was allowed to remain in the possession of the debtors. These are the conclusive tests of a mortgage, and stamp the character of the instrument beyond controversy.—*Peebles v. Stolla,* 57 Ala. 58; *Eiland v. Radford,* 7 Ala. 724; *Williamson v. Culpepper,* 16 Ala. 211; *Turnipseed v. Cunningham,* 16 Ala. 501; *Crews v. Threadgill,* 35 Ala. 342; *Locke v. Palmer,* 26 Ala. 312; *Building Asso. v. Robertson,* 65 Ala. 382; *Russell v. Southard,* 12 Howard, 139. This court, on each of the former appeals, in effect placed this construction on the instrument.—64 Ala. 330; 69 Ala. 476.

2. The instrument is usurious on its face. The stipulation for the payment of $2,500 as a *bonus,* over and above the debt, is of the essense of usury, and is decisive of the question. *Graeme v. Adams,* 23 Gratt. 225; 14 Amer. Rep. 230; *Jackson v. Kirby,* 37 Vt. 448; 7 Wait's Ac. & D. 603; *Cummins v. Wire,* 2 Halst. Ch. 73; *Matlock v. Mallory,* 19 Ala. 694; *Munter & Faber v. Linn,* 61 Ala. 496; *Gleason v. Burke,* 20 N. J. Eq. 300; 50 N. Y. 437; Tyler on Uusury, 156, 325. The additional stipulation for the use and possession of the property, without liability to " account to or with the said first parties for or on account of the use of said property, or any profit or revenue that may be derived therefrom," is equally usurious.—*Brown v. Vredenburg,* 43 N. Y. 195; *Thomas v. Murray,* 34 Barb. 157; *Sweet v. Spence,* 35 Barb. 44; *Uhlfelder & Co. v. Carter,* 64 Ala. 533; *Building Asso. v. Robertson,* 65 Ala. 390.

3. Although one defendant has defaulted, he may have the benefit of the defense of usury, when interposed by another. *Tappan v. Prescott,* 9 N. H. 531; 7 Wait's Ac. & D. 630; 47 Ala. 377.

4. The mortgage being usurious, the complainant can recover neither interest nor costs.—*Hunt v. Acre,* 28 Ala. 580;

*Noble v. Walker*, 32 Ala. 459 ; *Bradford v. Daniel*, 65 Ala. 133 ; *Dawson v. Burrus*, 73 Ala. 111.

SOMERVILLE, J.—The questions raised in these cross-appeals involve the construction of the agreement between the parties litigant, bearing date December 18th, 1876. The first point of contention is as to the nature of this instrument—whether it is a mortgage, or a conditional sale. It is very obvious that the difficulties of construction lie in its duplex character, involving, as it does, a clear attempt to make a con-ditional sale, and at the same time preserve the continued existence of the debt, and bind the property for the security of its payment. The provisions of the agreement are, therefore, somewhat repugnant in their nature, the law not permitting that to be done which seems to have been attempted. The instrument must be construed to be either a mortgage or a conditional sale—it cannot be both at one and the same time.

The rule has long been settled in. this State, that, in cases of doubt, the courts are always inclined to construe contracts to be mortgages, rather than conditional sales. The reason is, that no great injustice can be perpetrated, so long as the creditor recovers his debt with legal interest, while much oppression may often result by the inability of the debtor to promptly re-purchase the property at precisely the time specified. An error of judgment, in other words, which may convert the transaction by construction into a mortgage would not be so oppressive or injurious as a like error which might change a mortgage into a conditional sale.—*Crews v. Threadgill*, 35 Ala. 334; *Turnipseed v. Cunningham*, 16 Ala. 501.

It must be admitted, that the form of the contract under consideration favors the view that it is a conditional sale. This, however, is not a controlling fact, but is dominated by the intention of the parties—mere matters of form being made to yield to those of substance.—*Eiland v. Radford*, 7 Ala. 724. The designation of the instrument as " a bill of sale," and the declaration that the grantee is to be regarded as the " absolute owner of the property," with the right on the debtor's part only to " re-purchase," are not conclusive of the legal nature of the contract. They must yield to the potent facts, that the relation of debtor and creditor subsisted between the parties before the alleged sale ; that the disparity between the value of the property and the price agreed to be paid for it is great; and, above all, that the debt itself is not satisfied or extinguished by the fact of the alleged sale.—*Turner v. Wilkinson*, 72 Ala. 361 ; *Eiland v. Radford*, 7 Ala. 724. As said by this court, in *Peebles v. Stolla*, 57 Ala. 53, "one of the tests by which to determine whether or not a mortgage was intended, is

the existence or not of a debt to uphold it.    If there is no debt, there can be no mortgage.    On the other hand, security for a debt is incompatible with the idea of a conditional sale, and when shown to exist, is conclusive that the transaction is a mortgage.

In the present case, the continued existence of the debt is preserved,—at least until what is denominated as the "re-purchase" of the property by the debtor, or until seven months after date of the agreement.    It is expressly declared, that the creditor "shall not lose or forfeit any lien or right that it may have secured to have the said judgment satisfied by a sale, under *venditioni exponas* or execution, of said property hereby sold and transferred, or *of any other property*," but that the judgment, to which the debt had been reduced, "shall be and remain valid and effective for all purposes, as a subsisting security" to the judgment creditor.    The preservation of the judgment in all its original force, with the right to levy upon and sell the property of the judgment debtor, is clearly a preservation of the debt, which was the sole vital principle of the judgment.    The instrument, in its inception, being a mortgage, it would continue to have this character impressed upon it, until foreclosure, or the purchase of the equity of redemption from the debtor upon a new consideration.    This is upon the settled maxim of equity, "once a mortgage, always a mortgage."

This conclusion is in accord with the view expressed by us when this case was last before us on appeal.    It was then said as to this agreement, *per* BRICKELL, C. J.:    "It is apparent from the most casual inspection of the agreement between the parties, that it was not intended the transfer of the personal property should operate as a satisfaction of the judgment, or embarrass or impair the rights or remedies of the appellee as a judgment creditor.    Security for the payment of the judgment, and all other debts due the appellee, was all that was contemplated; and such security was intended to be afforded, while the debtors were to be saved from the injury apprehended from a forced sale of the property, the right of redeeming by payment of the debts being secured to them."—*Rapier v. Gulf City Paper Co.*, 69 Ala. 476, 482–83.

It is contended on behalf of Rapier's counsel, in the appeal taken by him, that the mortgage debt is usurious.    The first ground taken is, that the agreement, above construed to be a mortgage, exacts not only the payment of the mortgage debt and interest, but an additional sum of twenty-five hundred dollars as a *bonus* required to be paid, as a pre-requisite to a re-purchase or redemption of the property by the debtors.    The stipulation is, that the grantee will re-transfer the property, if the debtor pay this sum within thirty days, and secure by good and approved security, payable in three installments, "*all*

*debts* that may at the time be due it [the judgment creditor] from the parties of the first part," together with interest, and certain expenses incurred. The amount of these debts, or of the several installments, is not specified. The agreement, therefore, is not incompatible with the theory, that the twenty-five hundred dollars should be regarded as a *payment* on the debt, and not as a *bonus* for forbearance. The law would so regard it, unless a contrary intention appears by clear implication; especially in view of the fact, that usury is prohibited by statute, and is visited with the penalty of a forfeiture of the entire interest, and the taxation of full costs.—Code, 1876, §§ 2092, 3130. The rule is universal, that where a contract is susceptible of two constructions, one of which will render it legal, and the other illegal, the court will incline to adopt the construction which will uphold the contract and preserve its validity. It is our opinion, that the agreement is not usurious on this ground.

It is further argued, that the contract is rendered usurious by the stipulation, that the creditor should have the use of the property without being held liable for any profit or revenue that might be derived from it. It may perhaps be true, as contended by counsel, that when a lender of money stipulates for a contingent benefit over and above the right to demand payment of his debt with legal interest in any event, the contract will, in such case, generally be held to be usurious. But usury, as often said, is chiefly a matter of intention, and the burden of proof is cast upon him who sets up the defense by seeking to impeach the legality of any given transaction.—*Dozier v. Mitchell*, 65 Ala. 511, 518; 2 Parsons on Bills and Notes, 405-6. Hence it is held, that where the lender takes upon himself any real risk of loss, other than the insolvency of the borrower, the contract is not necessarily usurious. It was said in *Wright v. Alexander*, 11 Ala. 236, that "to constitute usury, there must be a certainty of receiving more for the use of money, than legal interest. If there is a hazard of losing, so that the lender may receive less than legal interest, or lose the principal, the contract is not *per se* usurious, but may be declared so if the contract was a mere device to evade the statute."

The use of the property, in the present instance, was fraught with great hazard of loss. This property consisted of a daily newspaper, with a job-office attached, which was at the time in operation, but appears to have been carried on at considerable pecuniary loss to the owners. If the mortgagee continued the business, it is necessarily implied from the terms of the agreement that he should do so at his own risk. If he did so, and incurred any loss, he would certainly be liable for it to the

[Spira v. Hornthall, Whitehead, Weissman & Co.]

creditors who might be damnified. It was possible, therefore, that, under the contract, the mortgagee might imperil and actually lose in the enterprise an amount greatly larger than the interest of his entire debt, if not a large portion of the principal. This, in our judgment, rescued the agreement from the vice of usury, which is sought to be imputed to the intention of the contracting parties.—2 Parsons on Bills and Notes, 412, 413.

We have considered the questions involved, without regard to the parol evidence which was introduced for the purpose of construing the intention of the parties. It is proper to add, that this explanatory testimony, if considered by us, would not authorize us to come to any other conclusions than those which we have announced

These views result in an affirmance of the decree of the chancellor on both appeals, which is accordingly ordered, such decree being, in our opinion, free from all error.