(96 South. 875)

CROWSON v. CODY et al. (3 Div. 587.)

(Supreme Court of Alabama. May 17, 1923. Rehearing Denied June 21, 1923.)

1. Pledges ⬅51—Bill fatally defective as bill for redemption, when not offering to pay debt.

Bill by pledgor of mortgage against the pledgee, who had redeemed from foreclosure of prior mortgage, was fatally defective as bill for redemption from the pledge, where it contained no offer to pay pledgee the amount of his debt.

2. Pledges ⬅21—Pledgee accountable as trustee with regard to dealings with pledged property.

Relation between pledgor and pledgee is one of trust, and, as to all dealings with the pledged property, the pledgee is regarded as trustee and accountable accordingly.

3. Pledges ⬅21—Relation of pledgor and pledgee of note and mortgage is substantially that of mortgagor and mortgagee.

Where pledge is by way of assignment of note and mortgage on land as collateral security, the relation of the parties with respect to the land is substantially that of mortgagor and mortgagee.

4. Pledges ⬅27—Pledgee of mortgage redeeming from foreclosure of prior mortgage accountable to pledgor after satisfaction of his own claims.

Where pledgee of mortgage redeemed from foreclosure of prior mortgage, the legal title so acquired was a trust estate for which he was accountable to pledgor after satisfaction of his own secured debt and the cost of the redemption.

5. Pledges ⬅27—Pledgor could enforce rights of cestui que trust only through medium of pledge and consistently with obligations to pledgee.

Where pledgee of mortgage redeemed from foreclosure of prior mortgage, the pledgor could enforce his rights as cestui que trust only through medium of the pledge and consistently with his obligations to pledgee.

6. Mortgages ⬅418—Pledges ⬅50—Mortgagor or pledgor cannot maintain bill to compel foreclosure.

Neither mortgagor nor pledgor, as such, can maintain bill in equity to compel foreclosure of the mortgage or pledge.

7. Pledges ⬅51—Pledgor of mortgage under which pledgee has redeemed from prior mortgage cannot maintain bill for sale for distribution.

Where pledgee of third mortgage redeemed from foreclosure of first mortgage, pledgor, under the rule that pledgor cannot compel foreclosure, could not maintain bill to compel sale of the property for distribution, and the bill was not rendered maintainable by bringing in claim of second mortgagee and seeking to give his mortgage priority over claim under the pledged mortgage.

8. Mortgages ⬅254—No privity of estate nor community of interest between assignee of second mortgage and pledgee of third, who has redeemed from first mortgage.

Where holder of second and third mortgages assigned the second mortgage and assigned the third, as collateral security to one who redeemed from foreclosure of first mortgage, there was neither privity of estate nor community of interest between assignee of the second mortgage and pledgee of the third.

9. Pledges ⬅51—Pledgor held entitled to maintain bill for accounting.

Where pledge was by assignment of mortgage as collateral security, substantially creating relation of mortgagor and mortgagee, and amount of debt was in dispute, and ascertainment and application of rents of the mortgaged lands were to be made, pledgor could maintain bill in equity for accounting.

10. Joint adventures ⬅5(2)—Bill held insufficient to impeach settlement.

Bill seeking to impeach settlement between parties to joint enterprise, but not alleging mistake, fraud, or undue advantage, but only that settlement was not correct and proper, and that many matters of debt and credit were left out, was insufficient to impeach the settlement.

11. Joint adventures ⬅4(1)—Assets left in one party's hands upon settlement for disposition to be taken into consideration upon subsequent accounting.

If, upon settlement between parties to joint enterprise, assets were left in one party's hands to be disposed of for account of the joint adventure, with understanding that any part of proceeds should belong to the other and be credited on an indebtedness, such matters must be taken into account in ascertaining amount due on such indebtedness on subsequent accounting.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Joint adventures ⊚⇒4(1)—When consideration was money to be advanced, which was not advanced, it should be taken into consideration upon accounting between the parties.**

If, on settlement between parties to joint enterprise, part of consideration for note was amount of money to be afterwards advanced to maker and which was not in fact advanced or accounted for, it must be deducted from amount of the note upon an accounting.

**13. Usury ⊚⇒16—Transaction, however disguised, usurious, if something in addition to interest paid for use of money.**

If one lends money in consideration of legal rate of interest, and something else of value in addition to interest for use of the money, the transaction is usurious under whatever form of contract it may be disguised or concealed.

**14. Usury ⊚⇒37—Joint adventure prima facie not usurious, though money advanced with interest to be repaid in any event.**

If transaction was in fact a joint adventure, entitling party advancing the money to share in the profits, it is prima facie not usurious, though he stipulated for repayment of the money in any event with legal interest.

**15. Usury ⊚⇒111(1)—When transaction ostensibly a joint enterprise, it must be alleged that this was mere disguise for usury.**

When transaction was ostensibly a joint enterprise, and prima facie not usurious, one claiming usury must allege and show that the transaction was not in good faith, but intended to disguise and conceal mere loan of money for which usurious compensation was to be paid, and, where there was no such allegation, demurrer was properly sustained.

**16. Pledges ⊚⇒27—Pledgee of mortgage redeeming from prior mortgage must account for rents and profits.**

As relation between pledgor and pledgee of mortgage, under which pledgee redeemed from prior mortgage, was substantially that of mortgagor and mortgagee, pledgee must account to pledgor for rents and profits derived from his possession under his legal title.

**17. Pledges ⊚⇒51—Bill for accounting must be disincumbered of other inapt allegations and purposes.**

Bill by pledgor of mortgage against pledgee for accounting must be disincumbered of other inapt allegations and purposes.

**18. Equity ⊚⇒247—Defective bill dismissed, when complaint cannot or will not amend to meet requirements.**

While the law of amendments is liberal, and the practice indulgent, if complainant cannot or will not finally amend defective bill within reasonable time to meet requirements of the law, it must be dismissed.

·Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill by J. C. Crowson against Michael Cody and H. B. Allison. From a decree sustaining demurrer and dismissing the bill, complainant appeals. Affirmed with modification of decree of dismissal.

W. A. Gunter, of Montgomery, for appellant.

See briefs in 206 Ala. 88, 89 South. 238; 207 Ala. 476, 93 South. 420.

Ball & Beckwith, of Montgomery, for appellee.

See brief in 207 Ala. 476, 93 South. 420.

SOMERVILLE, J. The primary purpose of the bill of complaint, both originally and as amended, is to hold the respondent Cody as trustee of the title to certain lands, and to execute the trust by a sale of the lands and a distribution of the proceeds among those alleged to have an interest therein, in the order of their respective priorities.

The essential facts upon which Cody's relationship to the lands as trustee, and the equities sought to be established and satisfied, are based, are as follows: The Tri-State Realty Company was the owner of the lands, and executed three successive mortgages thereon, the first, for about $10,000, to a Selma bank; the second, for about $3,-500, to the complainant, Crowson; and the third, for $16,500, also to the complainant. Complainant transferred said second mortgage to one H. B. Allison, who is made a party respondent to the bill. Complainant also transferred said third mortgage to the respondent Cody, as collateral security for a debt of $16,050, due from him to Cody, and evidenced by his promissory note for that amount, dated October 9, 1915.

After the transfer of said second and third mortgages by complainant to Allison and Cody, respectively, the said first mortgage was foreclosed, and the mortgagee therein became the purchaser at the sale made under the power therein contained. Neither the original mortgagor, nor Crowson, nor Allison, sought to exercise the statutory right of redemption; but, before the expiration of the two-year period, the respondent Cody effected such a redemption by paying to the purchaser's vendee the sum of $13,696.28, and receiving from him a deed conveying the lands in fee simple. Thereupon Cody went into possession of said lands, receiving and appropriating the rents, and claiming them in his own right, and denying that the complainant Crowson or said Allison have any interest therein.

It is alleged that the land is worth largely in excess of the three mortgage debts, and the main prayer of the bill is that the lands be sold and the proceeds applied (1) to the reimbursement of Cody for the cost of his redemption from the first mortgage sale; (2) to the satisfaction of the second mortgage held by Allison; (3) to the satisfaction of complainant's debt to Cody; and (4) that

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

any balance remaining be paid over to complainant.

Other allegations and prayers are incidental merely, and are designed to reduce the amount of the debt claimed by Cody against complainant, and to secure an accounting between them, with discovery, to determine the amount actually due. These features of the case will be referred to and considered in their appropriate place. Some of them were discussed on a former appeal of the case (Crowson v. Cody, 207 Ala. 476, 93 South. 420), wherein will be found a statement of the substance of the original bill of complaint.

Since that appeal, whereon it was held that the trial court properly sustained the demurrer to the bill, the bill has been amended by the addition of five new, paragraphs, but with no change in the prayers for relief. Cody demurred to the bill as amended, assigning all the original grounds, and also seven additional grounds. The demurrer was sustained generally, and the appeal is from that ruling of the trial court.

As to its dominant asserted equity, the theory of the bill of complaint is that Cody holds the legal title to the lands as trustee for Crowson and Allison, and that, upon the general principles of equity relating to trusts, the property can be and should be sold and the proceeds appropriated to the satisfaction of all equitable claims thereto as they are alleged to be entitled.

[1] The bill does not seek to have a foreclosure of the mortgage transferred by Crowson to Cody, and there are no averments appropriate to such relief. Nor does it seek a redemption from the pledgee, in which aspect, as declared on the former appeal (Crowson v. Cody, 207 Ala. 476, 93 South. 420), it would be fatally defective for want of an offer to pay to the pledgee the amount of his debt. So far as the sale of the lands is concerned, it is purely and simply an attempt to execute an alleged trust, as equity executes trusts in general in behalf of equitable owners. Whether or not this can be done, as here proposed, must be determined in the light of the settled rules of law and equity, and upon considerations of justice and propriety.

[2] The relation between a pledgor and his pledgee is certainly one of trust, and as to all dealings with the pledged property the pledgee is regarded as a trustee, and is accountable accordingly. Keeble v. Jones, 187 Ala. 207, 65 South. 384; Hicks v. Dowdy, 202 Ala. 535, 81 South. 37.

[3] Where the pledge is by way of an assignment of a note and mortgage on land as collateral security, the transaction has been called "a mortgage of a mortgage," and, with respect to the land, the relation of the parties is substantially that of mortgagor and mortgagee.

[4] Unquestionably, then, Cody's legal title, acquired by purchase or redemption from the vendee under the first mortgage sale, is a trust estate for which he is accountable to his pledgor or mortgagor, Crowson, after the satisfaction of his own claims, viz. the amount of the debt secured by the pledge, and the cost of the first mortgage redemption.

[5] But only through the medium of his pledge, and consistently with his obligations to his pledgee, can Crowson assert and enforce the rights of a cestui que trust. The obligations of the trust relation are limited and strictly reciprocal. If it be true that Cody was able to buy in the legal title, as he did, only by virtue of his being clothed with an interest in the property as Crowson's pledgee or mortgagee, it is equally true that Crowson can hold him as trustee of that title only by virtue of his own relation to Cody as Cody's pledgor.

[6, 7] Neither a mortgagor nor a pledgor, merely as such, can maintain a bill in equity to compel the foreclosure of the mortgage or pledge. 27 Cyc. 1547m, and cases cited in note 68; Kelly v. Longshore, 78 Ala. 203; Bingham v. Vandegrift, 93 Ala. 283, 9 South. 280. As declared in the last-cited case:

"The owner of the equity of redemption has no right against the mortgagee, except the right to redeem. He cannot compel the mortgagee to foreclose his mortgage."

This principle is manifestly fatal to the equity of the bill as to its main purpose— a sale of the property for distribution.

[8] Nor can this alleged equity be strengthened by bringing in the claim of Allison as second mortgagee, and seeking to give to it a priority of payment over Cody's claim under the third mortgage, for there is neither privity of estate, nor community of interest, between Allison and Cody. That there is any such privity or community between them is, we think, the fundamental error of the bill of complaint. If Crowson should redeem from Cody, thereby freeing the lands from the charge of the first mortgage, the redemption would undoubtedly inure to the benefit of Allison, as assignee of Crowson's second mortgage. But, we repeat, the approach to Cody's legal estate lies along a single, narrow path, which none but Cody's pledgor, Crowson, may travel, and he only upon the condition, prescribed by equity, of satisfying the debt for which the pledge was given.

This, of course, is not to say that a third mortgage is, under any conditions, superior to a second mortgage. The relations and rights of these parties, under the circumstances now developed, present no such question.

As a bill for the execution of a trust, we held that the bill is without equity, and that the demurrer to the bill as to that aspect was properly sustained.

In this view of the case, it is unnecessary to pass upon the question, presented by one

of the grounds of demurrer, whether the original mortgagor, the Tri-State Realty Company, is a necessary party to the bill. But it may be remarked in passing, if Cody's redemption inures to the benefit of Crowson and Allison (as the bill asserts), it is difficult to understand why the discharge of Cody's claims would not inure to the benefit of the Tri-State Realty Company also, if any surplus should remain after satisfying the second and third mortgages. Certainly the original mortgagor is entitled to his "place in the sun," if the principles of equity invoked in behalf of Crowson and Allison are to be justly applied. The theory and prayer of the bill, however, would exclude Crowson's mortgagor from any share.

We consider now the other aspects of the bill.

[9] On the former appeal we held that the mere relation of pledgor and pledgee would not support a bill for an accounting. Crowson v. Cody, 207 Ala. 476, 93 South. 420. But where the relation is substantially that of mortgagor and mortgagee, and the amount of the debt is in dispute, and especially where the ascertainment and application of the rents of mortgaged lands is required to be made, a right to an accounting exists, and a bill may be maintained in equity for that purpose.

In its aspect as a bill for accounting between mortgagor or pledgor and mortgagee or pledgee, we think the bill, as amended, has equity, and may be maintained.

Crowson's debt to Cody, as collaterally secured, is evidenced by his note for $16,050. In impeachment of this debt, the bill alleges the following matters:

(1) The note was given in settlement of the balance due from Crowson to Cody, resulting from their operations under a joint enterprise for the buying and selling of real estate, which enterprise began in 1912 and terminated on October 19, 1915; and the amount of the note thus given is incorrect, in that as to some of their dealings Cody made sales at a profit of about $3,000, which he improperly retained; and which should have been credited to Crowson; and in that the note included $3,000 or more to be afterwards advanced by Cody to Crowson, but which was not in fact advanced.

(2) Usurious exactions were included in the note to the amount of about $4,000; being the amount claimed by Cody in excess of 8 per cent. interest on the money advanced by him for the operation of the business.

(3) Cody has received large sums of money as rents for the mortgaged lands, which should in equity be credited on Crowson's note.

[10] With respect to the first contention, the allegations of the bill, even as amended, are not sufficient to impeach the settlement shown to have been deliberately made between Cody and Crowson at the termination of their joint adventure on October 9, 1915. Indeed, the pleader seems to studiously avoid any charge of mistake, fraud, or undue advantage in the settlement; and adds nothing to the allegations of the original bill other than the general statement, that the settlement was not a correct and proper one, and that many matters of both debt and credit were left out. This falls far short of what is required to enlist the aid of a court of equity to open the settlement. Paulling v. Creagh's Adm'r, 54 Ala. 646, 652; Kilpatrick v. Henson, 81 Ala. 464, 1 South. 188; Scheuer v. Berringer, 102 Ala. 216, 14 South. 640; 1 Corp. Jr. 716, § 358. As said in Paulling v. Creagh's Adm'r, supra:

"If the account impeached be a settled account, or if an instrument has been executed at the foot of it, the court expects that the errors should be specified in the bill and proved as specified."

This rule has been specifically applied to a settlement between partners, since they do not bear such a fiduciary relation to each other as to render a settlement between them less binding than between other persons. Scheuer v. Berringer, 102 Ala. 216, 14 South. 640.

The defect noted was aptly pointed out by one of the grounds of the demurrer, and that ground was properly sustained.

[11, 12] If choses in action or other property were left in Cody's hands at the time of the settlement, to be disposed of by him for the account of the joint adventure, with the understanding that any part of the proceeds should belong to Crowson, and should be credited on his note to Cody, such matters must, of course, be taken into account in ascertaining the amount due on the note; and, if a part of the consideration for the note was an amount of money to be afterwards advanced to Crowson, which was not in fact advanced or in any way accounted for, this must, of course, be deducted from the amount of the note.

[13] The allegations of the bill are wholly insufficient to sustain the charge of usury. It is true that, if one lends money upon the consideration that he is to receive the legal rate of interest and also something else of value, over and above such interest, for the use of the money, the transaction will be regarded as usurious. It is true, also, that this result cannot be avoided, if the transaction was in fact a loan of money merely, under whatever form of contract the usurious purpose may be disguised or concealed. Rapier v. Gulf City Paper Co., 77 Ala. 126, 136; Wright v. McAlexander, 11 Ala. 236; Ruckdeschall v. Seibel, 126 Va. 359, 101 S. E. 425, and authorities therein cited.

[14] But, if the transaction was in fact a joint adventure, upon such terms as to entitle the party who advanced the money to a share in such profits as might be made, it

is prima facie not usurious, although he stipulates for the repayment of the money, in any event, with legal interest for its use in the business. Ruckdeschall v. Seibel, supra; Goodrich v. Rogers, 101 Ill. 523, 529; Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. 690, 68 Am. St. Rep. 810, 812.

As observed by Mr. Collyer:

"The only question in cases of this kind will be, whether or not it was the intention of the parties to enter into an agreement having the semblance of a partnership agreement, with a view to evade the usury laws. * * * The better opinion, however, is that an agreement having the form of a partnership agreement, but in which profits beyond the legal rate of interest are reserved to one of the parties, is legal, unless it appears to have been executed by way of shift or contrivance to cover usury, because, at all events, the principal, for which such profits and interests are taken, is hazarded to third persons." 1 Collyer on Part. (6th Ed.) 120, § 68.

[15] In the instant case, the transaction exhibited is prima facie not usurious, and it is necessary for the bill to charge, and, the evidence to show, that it was not made in good faith, but was intended to disguise and conceal a mere loan of money, for which usurious compensation was to be paid to the lender. No such allegation is made, and the ground of demurrer addressed to this phase of the bill was well taken and was properly sustained.

[16] The relation between Crowson and Cody as to these lands being substantially that of mortgagor and mortgagee, Cody will be accountable to Crowson for the rents and profits derived from Cody's possession under his legal title, which in equity are applicable to the mortgage debt.

[17] In our view of the case, as fully developed above, the only equity in the bill of complaint is the equity to an accounting. In order to maintain the bill for that purpose, it must be, by appropriate amendment, disincumbered of other inapt allegations and purposes; and in those parts which seek to falsify the settlement note the allegations must be amended to meet the requirements above stated, or they must be stricken from the bill.

[18] While the law of amendments is liberal, and the practice of courts indulgent, there must be an end to litigation, and if a complainant cannot or will not finally amend a defective bill so as to meet the requirements of law within a reasonable time, there is no recourse except to dismiss the bill.

The decree of the trial court sustaining the demurrers to the bill, as amended, will be affirmed, but the decree dismissing the bill will be modified and conditioned so as to allow the complainant 30 days in which to amend the bill, as above indicated, if he desires to do so. The costs of this appeal will be taxed against appellant.

Affirmed, with modification of the decree of dismissal.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.