# Pioneer Mining & Manufacturing Co. v. Shamblin.

## *Bill in Equity for an Injunction.*

1. *Injunction; right of owner of mineral interest in lands to enjoin the owner of the surface from interfering with pipe lines laid on said lands.*—The owner of an interest in the mineral deposits in certain lands who has laid and is operating and maintaining a pipe line carrying water on and across said lands, cannot enjoin the owners of the fee in the lands, save the mineral interest, from disconnecting or interfering with said pipe line; the minerals in said lands not being mined, and the alleged right to maintain the pipe line not being rested upon an easement that complainant may have with respect to mining the mineral deposits in said land.

2. *Estoppel.*—The fact that the owner in fee of certain lands, save the mineral interest therein, consented for the owners of the mineral deposits in said land to construct and operate a pipe line over said land pending the settlement of a dispute between the owners of the two interests, does not estop the heirs of said owner of the fee from interfering with the maintenance of the said pipe line on and over said lands.

3. *Same; when not created by acquiescence.*—The fact that the owner of the fee in lands, save the mineral interests, allowed one who owned an interest in the mineral deposits in the land to lay a pipe line on and across said lands without objecting thereto, does not estop the owners of the fee from disconnecting or interfering with the maintenance of said pipe line, when it is shown that the builder of the pipe line knew the true state of the title, and there is nothing to show that he was induced by the owner of the fee to construct the pipe line or misled by his silence.

APPEAL from the Chancery Court of Tuscaloosa.

Heard before the Hon. JOHN C. CARMICHAEL.

The appeal in this case is prosecuted from a decree dissolving a temporary injunction restraining the appellees from disconnecting or interfering with a pipe line carrying water which the complainant had laid, and

was operating and maintaining on and across certain lands owned by the appellees; the complainants having an interest in the mineral deposits of said lands. The facts of the case are sufficiently stated in the opinion.

WALKER, TILLMAN, CAMPBELL & MORROW, for appellants.—In the case of *Cowan v. Southern Railway Co.*, 118 Ala. 554, it was held that, "when the owner of land has knowledge of the fact that a railroad is proceeding to locate and construct its road on his lands, and he allows it to expend large sums of money for this purpose, without interfering with or forbidding it to proceed, he is estopped from evicting it by ejectment." And this is true although the railroad company knew at the time that it had no title or claim to the land in question.

This court will not try the title to the land in a proceeding of this character. The appellant being in actual possession can restrain such trespass as would result in irreparable damage, in event of refusing the relief, although the title to the land may be in dispute.—High on Injunctions, § 698, cited with approval in *Kellar v. Bullington*, 101 Ala. 271. It has also been held "that where if the defendant's allegations are true, the injunction will do no harm, and if the plaintiff's allegations are true, a dissolution will involve him in irreparable injury, the injunction will not be dissolved."—*Scholze v. Steiner*, 100 Ala. 148.

It is well settled, says the court, in the *Cowan* case, that when the owner of the land has knowledge of the fact that a railroad company is proceeding to locate and construct its road on its lands, and he allows it to expend large sums of money for this purpose without interfering with or forbidding it to proceed, he is estopped from evicting it by ejectment. In such case there only remains to him a right of compensation. No good reason is perceived why this rule, so well settled as to railroads, is not equally applicable to mining companies having the right of eminent domain. Appellant went on the land by Shamblin's permission, it expended large sums of money, it was using the pipe line in operating its mining properties. Appellee waited until the work was done

and then cut the line. But for John Shamblin's agreement the company might have condemned the right of way, and appellee should be restrained from interfering. 6 Am. & Eng. Ency. of Law, (1st ed.), 596; *S. & N. Ala. R. R. Co. v. A. G. S. R. R. Co.*, 102 Ala. 236; *Cowan case,* 118 Ala. 560; *Maddox v. Pollard,* 28 Ala. 321.

Jones & Fitts, *contra,* cited *Barnard v. Davis et al.,* 54 Ala. 573; *Steel v. St. Louis Smelting Co.,* 106 U. S. 447; *Rubber Co v. Rothery,* 107 N. Y. 314; s. c. 1 Am. St. Rep. 822; *Stern v. Baker,* 150 U. S. 312.

McCLELLAN, C. J.—This bill is filed by the Pioneer Mining & Manufacturing Company against Mary J. Shamblin and others, her brothers and sisters, the heirs at law of John Shamblin, deceased. As amended, its purpose and prayer is to enjoin the respondents from breaking or interfering with a pipe line carrying water which the complainant has laid and is operating on and across the southeast quarter of the northeast quarter of section 35, township 20, range 6, west. The bill does not allege title in complainant to this land, but only that it owns an undivided one-half interest in the mineral deposits in the land; that the Tennessee Coal & Iron Company owns the other undivided interest in said deposits, and that the Tennessee Company has consented for complainant to lay, maintain and use this acqueduct on the land. The respondents have the fee in the land save the mineral interests. The minerals in this land are not being mined by the complainant, nor is its alleged right to maintain this pipe line at all rested on any easement it may have in respect of mining these mineral deposits. No argument, discussion or citation of authorities is needed to demonstrate that on the facts so far stated the complainant has no right whatever to maintain this pipe line on respondent's land, and that there is no ground for any presumption or even anticipation that such right will ever be adjudged or decreed to complainant on the final hearing, and hence there is no occasion, so far, at least, as these facts are concerned, to consider the relative injury which may result on the one hand to the com-

plainant from a dissolution of the injunction, and, on the other, to the respondents from its continuance: That is a matter of proper consideration only when it can be seen, at least, that the complainant may establish its right and title on the final hearing. There is no probability, or even possibility of this on the facts to which we have adverted. But, in apparent recognition of this, averments are made in the bill which are intended to show that respondents are estopped to assert their title to this land and their exclusive right to its possession and uses as against complainant's use of it to maintain and operate their acqueduct. Two grounds of alleged estoppel are averred. First, it is averred that John Shamblin, respondent's ancestor, consented for complainant to construct and operate the pipe line over this land, pending the settlement of dispute between him and the complainant about the title. If this consent was given by John Shamblin, which is denied, and if it had reference to this particular tract of land, which is open to diverse inference even on the averments of the bill, it was of a limited character and, in a sense, conditional. The consent was limited to the time necessary to settle the dispute, and conditional upon a settlement favorable to complainant. But had the consent been unlimited and unconditional, it cannot bind the respondents by way of estoppel or otherwise. It was in parol, and therefore, revocable at the will of John Shamblin, and assuming that the consent was acted on, in his lifetime, it was still revocable by the respondents after his death; and if, as appears by the answer, the pipe was not laid 'till after John Shamblin's death, his alleged consent had no operation at all, not even to save complainant's entry from being a trespass.

It is further averred in the bill that these respondents stood by and allowed complainant, without objection, to lay this pipe line at great cost, etc., etc., and hence that they are now estopped to insist upon its removal. On general principles, these averments present no case of estoppel. There is no pretense that the complainant was ignorant of the true state of the title or of any of respondent's rights in the premises. To the contrary the

company knew that John Shamblin originally and these respondents since his death had the title to this land. It is not even pretended that these respondents induced complainant, or that complainant was misled by their silence to construct their aqueduct on their land. Having a knowledge of all the facts, which importune a total want of right on its part to carry its line over this land, and not being induced thereto—even assuming without deciding, that would make any difference—by the respondents there is no recognized general principle of estoppel which could operate to deny the respondents the possession and use of their land to the exclusion of the complainant and its aqueduct. There is no abstract equity in the contrary view. One man should not in equity and good conscience be allowed to appropriate the land of another by merely taking it with full knowledge of the other's ownership and without some assurance beyond passive silence on the owner's part that the owner consents or acquiesces in the taking. It is the duty of the stranger to keep off. The owner forfeits no right by failing to warn him off unless such failure occurs under circumstances which are calculated to induce and do induce the stranger to go upon the land. This case on the averments of the bill presents no element of that sort. The answer, moreover, denies any acquiescence on the part of the respondents in complainant's use of the land, and, to the contrary, show affirmatively that the mother of the respondents who resides on the place of which this is a part, and who, on the facts stated, may well be considered as the agent of all the respondents in this matter, expressly objected to and protested against complainant's constructing its pipe line on the land. So we conclude that complainant's attempt to show an estoppel upon the respondents has failed; and that upon the whole case there arises no predicate for the exercise of discretion as to continuing or dissolving the injunction upon a consideration of the relative injury to result to the parties.

If, as is argued by counsel, our cases hold that where the owner of land acquiesces in by failing to object to the construction of a railway over his land, he is estopped to

[Wallace v. Board of Revenue of Jefferson County *et al.*]

recover the land upon which the road is built, the doctrine should not be extended to cases of this sort, in which the public have no interest and where there is no principle of public policy involved.

In our opinion, the chancellor properly dissolved the injunction in this case, and the decree must be affirmed. Affirmed.

