# Keeble v. Jones, et al.

Bill to Redeem Insurance Policy From Pledge.

(Decided April 16, 1914.   Rehearing denied May 21, 1914.
65 South. 384.)

1. Insurance; Pledge of Policy; Rights of Parties.—Where complainant pledged a policy insuring his life as a security for a loan, and on the debtor's failure to pay his premium, the lender converted the policy into a paid-up policy, the substituted policy must be regarded as held during the life of the pledge for the joint account of the borrower and the lender, as their interest might appear.

2. Same; Construction.—Where a life policy was assigned as security for a loan, but there was no conveyance of title in the substantial form of a mortgage, the assignment merely evidenced respondent's right as pledgee.

3. Pledges; Nature; Redemption.—A pledge is a species of bailment, and being a bailee, the pledgee cannot, during the life of the bailment, deny the superior title of his bailor; hence, there is no limitation upon the right of the pledgor to demand and recover the pledge upon payment of the debt secured, the pledge not having been foreclosed.

4. Same; Right of Pledgee; Foreclosure.—Where no time for redemption is fixed, a pledgee may call upon the pledgor to redeem,

and on failure to redeem may foreclose same by public sale after reasonable notice.

5. *Same; Duty of Pledgee; Choses in Action.*—Where choses in action, evidencing debts are pledged, it is the duty of the pledgee to collect them when due.

6. *Same.*—While the law of pledges falls under the head of bailment, rather than any general doctrine of equity, equity will take jurisdiction of cases rising out of the collateral assignment of security, because the pledgee occupies a position analogous to that of trustee, and equity will not permit him to deal with the trust property so as to destroy or impair its value.

7. *Same; Limitations; Accrual of Action.*—Limitations against the right of a pledgor to recover any overplus in the case of the sale of the pledged property begins to run from the time of the receipt of the money, under the provisions of section 3301, et seq., Code 1907.

8. *Same.*—A pledgee is entitled to possession of the pledged property, although limitations may have barred the original debt.

9. *Same; Redemption; Bill.*—Where a pledgor files a bill to redeem the pledge, he is suject to the usual equity rules, and his right may be defeated by laches.

10. *Same; Laches.*—If a party is entitled to redeem a pledge, and an accounting is necessary to protect his right, an accounting will be decreed, although ordinarily a party's right to demand an accounting will be denied on the ground of laches where not sought for a period of twenty years.

11. *Same; Redemption; Laches.*—Where a life policy was deposited as a security for a loan which has been largely satisfied by the foreclosure of mortgages given to secure it, the pledgor may maintain a bill to redeem notwithstanding the lapse of more than twenty years, where the pledgee has not attempted to foreclose the pledge in any of the approved methods. The right of the pledgor to redeem not having been questioned, no limitations ran, and he is not barred on the theory of laches; it not apeparing that his delay caused the creditor to change his position in any manner to his detriment.

12. *Same.*—While the mortgagee has the complete legal title and his possession is adverse to the mortgagor after forfeiture, yet in case of a pledge, the general title remains in the pledgor, and there is no forfeiture until the property pledged is applied to the payment of the debt scured; hence, the pledgee is presumed to hold the pledge subject to the pledgor's title until the contrary appears.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Bill by Henry C. Keeble against Alex W. Jones and another to redeem a life insurance policy from a pledge, and for an accounting. From a decree for respondents complainants appeal. Reversed and remanded.

[Keeble v. Jones, et al.]

ARTHUR M. PITTS, and PARTRIDGE & HOBBS, for appellant. Unless all the elements thereof are disclosed by the bill, laches is an affirmative defense.—*First N. Bank v. Nelson,* 106 Ala. 535. There is no fixed and unyielding rule for determining when the court of equity will deny relief or require explanation of delay.—*Montgomery L. & P. Co. v. Lahey,* 121 Ala. 131; *Fowler v. Ala. I. & S. Co.,* 51 South. 393; *First N. Bank v. Nelson, supra; Pratt L. & I. Co. v. McClain,* 135 Ala. 452. The limitation does not begin to run until the trust relation has ceased to be active or continuous.—*Haney v. Legg,* 129 Ala. 619, and authorities supra. As to any surplus the assignee is trustee for the beneficiaries named in the policy.—*Helmetagg v. Miller,* 76 Ala. 183; *Ala. G. L. I. Co. v. Mobile M. L. I. Co.,* 81 Ala. 329; *Culver v. Guyer,* 129 Ala. 607; 94 S. W. 20; 122 S. W. 231; 37 S. E. 843; 75 Am. St. Rep. 770.

KEITH & WILKINSON and E. C. JONES, for appellee. Appellee's contention is that the rule of repose of the doctrine of prescription of twenty years is one beyond which human transactions shall not be open to judicial investigation, and that this rule is applicable to the case at bar.—*Mullin v. Walton,* 142 Ala. 166. This applies to mortgages.—*Porter v. Wheeler,* 105 Ala. 451; *Bailey v. Butler,* 108 Ala. 153. On rehearing, in addition to the above authorities, counsel cite the following. —*Snodgrass v. Snodgrass,* 58 South. 201; *Roach v. Cox,* 160 Ala. 425; *Black v. Pratt,* 85 Ala. 504; *Matthews v. McDade,* 72 Ala. 377; *Woodstock v. Roberts,* 87 Ala. 436; *Jefferson v. Pettus,* 132 Ala. 671.

SAYRE, J.—Appellant pledged to appellee a policy of insurance on his (appellant's) life to secure the debt of another. A little more than 20 years afterwards ap-

pellant filed his bill to redeem, offering to pay any balance due upon the debt, including, as we read the bill, interest to date. The court below, holding that appellant had slept too long, sustained a demurrer. Hence this appeal.

The bill avers that in 1890 the Keeble Company, a corporation, borrowed a sum of money from appellee, to be repaid January 4, 1891, and to secure the same transferred, assigned, and delivered to him certain real and chattel mortgages, and the debts thereby secured, the aggregate value of such securities being equal to or largely in excess of the indebtedness secured, and in addition appellant, who was then the manager of the company, did "transfer, assign, and deliver" to appellee, "as collateral security" for the company' debt a certain policy or contract of insurance upon appellant's life. The full meaning of the relation between the parties, in its inception, is to be determined upon the facts stated above and their necessary and reasonable implications. In 1892 appellant foreclosed some or all the mortgages, and credited the collections upon the Keeble Company's debt, so that, at the time of the filing of this bill and all along, the reserve value of the policy greatly exceeded the debt due to appellant, though the latter be calculated with interest. Appellant is unable, however, to state the amount due upon the debt, that being a matter within the knowledge of appellee only, and seeks an accounting to ascertain the same in order that he may redeem. In the same year, appellant having failed to keep up his annual premium payments, appellee surrendered the assigned policy and received in lieu a paid-up policy, payable at appellant's death to his personal representative. We think there can be no doubt that the substituted policy should be regarded as having been accepted and held during the life of the pledge for

the joint account of appellee and the assured, according
to their respective interests, and subject to the same
right of redemption as the policy surrendered.—*Dun-
gan v. Mutual Benefit Life Insurance Co.*, 46 Md. 498.
The policy was "assigned," but there was no convey-
ance of title in the substantial form of a mortgage; that
is, there was no conveyance upon condition or defeas-
ance expressed in an instrument of conveyance.   The
assignment, in these circumstances, witnessed merely
appellant's special right and title as pledgee.—*Cortelyou
v. Lansing*, 2 Caines, Cas. (N. Y.) 200; Jones on
Pledges, § 9.

Pledge is a species of the generic subject of bailment.
A bailee holds a relation to his bailor analogous to that
of a tenant to his landlord.   The bailment lasts until
the object for which it was made is accomplished, and
during its life the bailee cannot deny the superior title
of his bailor.—*Benje v. Creagh's Adm'r*, 21 Ala. 151;
*Lay's Ex'r v. Lawson's Adm'r*, 23 Ala. 377. The pledgee's
interest is a special property to retain the subject of
the pledge for the security of his debt.   According to
the common-law authorities, his special property and
precarious possession under his contract is never con-
verted into an absolute title by the unaided effect of
time.   Hence there is no limitation of the pledgor's
right to demand and recover the subject of the pledge
on payment of the debt secured.   The pledgee's rem-
edies against an indefinite prolongation of the relation
after default have always been and are now ample in
the case of a pledge of chattels, properly so called, or
stocks and bonds, which are treated as mere symbols of
tangible property.   Always he could call upon the
pledgor to redeem, where no time for redemption was
fixed by contract, and he could foreclose by public sale
after reasonable notice.—Jones on Pledges, § 602 et

seq. In the case of ordinary choses in action, evidences of debt, no special ground of equitable appeal intervening, he was bound to hold and collect when due.—Jones on Pledges, § 651 et seq. Now the statute provides a remedy in all cases, cumulative in some, by sale after prescribed notice.—Code, § 3301 et seq. In all cases the overplus of proceeds, after payment of the debt secured, belongs to the pledgor, and may be recovered by an action for money had and received; the statute of limitations beginning to run against such action from the time of the receipt of the money.—*Hancock v. Franklin Ins. Co.,* 114 Mass. 155.

While the law of pledges falls under the head of bailment at common law rather than under any general doctrine of equity, courts of equity have been accustomed to take cognizance of cases arising out of the collateral assignment of securities upon acknowledged grounds of equitable jurisdiction. In that jurisdiction, for just reasons arising out of the contract and the status of possession created by the acts of the parties, the pledgee is considered to hold as a trustee for the joint account of himself and the pledgor.—*Joliet Iron & Steel Co. v. Scioto Fire Brick Co.,* 82 Ill. 548, 25 Am. Rep. 341.

"The responsibilities of the pledgee to the pledgor are similar to those of a trustee, first, to collect and apply the securities at their maturity to the payment of the debt, in the case of promissory notes and bills of exchange, though sale may be made where the collateral securities are long-time negotiable bonds; and, secondly, to pay over the surplus, if any, to the pledgor. The pledgee is also likened to a trustee, as he may not deal with the trust property so as to destroy or impair its value."—Colebrooke, Coll. Secur. § 87.

As for the statute of limitations, the pledgee is entitled to retain possession, notwithstanding the statute

may have barred the original debt, since the statute, defeating simply the remedy upon the debt, does not operate to discharge the debt or the pledge.—Colebrooke, Coll. Secur. § 101.

When the pledgor goes into equity to redeem he is bound by the customary principles of that jurisdiction. Hence it is held that he must do equity and that the equitable right to redeem may be defeated by laches. In *Gilmer v. Morris,* 80 Ala. 79, 60 Am. Rep. 85, it is said to be the modern doctrine that "after a long lapse of time," if no claim for redemption is made, the property will be presumed to have vested absolutely in the pledgee, because the pledgor has slept on his rights; and that was the theory upon which this case was decided against appellant in the court below. The judgment against the relief sought in *Gilmer v. Morris, supra,* so far as it was rested upon the doctrine of laches was unquestionably controlled by the special circumstance that, pending the pledgor's quiescence of nine years, and shortly before the bill was filed, there had been an extraordinary and most impressive rise in the value of the stock pledged. Said SOMERVILLE, J., speaking his individual view of the law of the case:

"Each case must necessarily depend upon its own circumstances, having regard, not alone to the mere question of time, but also to the circumstances and relative situation of the parties, the nature of the property pledged, whether stationary or fluctuating in value, and other facts affecting the justness or equity of the right asserted."

STONE, C. J., though keeping in mind, as his opinion shows, the patent inequality in the situation of the parties which had been brought about by complainant's delay and the change in the value of the stock, and the effect of these circumstances upon the equity of the

case, added his individual suggestion that, by a transfer of the stock on the books of the company, the title had vested in the pledgee, and the relation between the parties had become that of mortgagor and mortgagee. That was tantamount to treating the transfer on the books as a species of foreclosure, putting an end to the pledge, and investing the pledgee with the rights of an adverse holder, the rights of a mortgagee in possession after forfeiture. We are not taking issue with the judgment in *Gilmer v. Morris,* which was decided on the evidence. Some expressions of opinion in that case and the facts upon which the judgment was rendered have been thus briefly recited as properly related to a statement of the considerations which take this case without its influence.

In the case before us, on the bill before us, no special circumstances have intervened to prejudice the interest of appellee. Absolutely nothing has occurred to affect the relation between the parties, except that, when appellee foreclosed his mortgages, he received a sum or sums of money that went to relieve in part the lien upon appellant's property. There is no appearance of matter that might be urged in defense, as that there has been a foreclosure in any sort, or a call upon appellant to redeem, or any denial of the right of redemption until recently. As for anything that has happened in the meantime, appellant's right to redeem is just what it was upon the Keeble Company's default in the payment of the debt, and his remedy at law by a tender of the balance due and an action for damages on refusal would be unaffected, though it would not be as efficacious and complete as his bill to redeem, owing to the nature of the property, if it were not that an accounting is necessary to ascertain that balance.—*Jones v. Smith,* 2 Ves. Jr. 372; *Cortelyou v. Lansing, supra.*

But an accounting is necessary, and in the ordinary case it may be considered unreasonable, after the lapse of 20 years to call for an accounting that might have been had at any time within the period, and a certain application of the doctrine of prescriptive presumption does well result ordinarily in the conclusion that the rights and liabilities of the parties have been terminated by an accounting had long ago. There is "a presumption that any and all claims or rights of property, which have been permitted to slumber without assertion or recognition for 20 years, have no legal existence or have been adjusted."—*Black v. Pratt Coal & Coke Co.*, 85 Ala. 511, 5 South. 94. Appellee invokes that presumption. It has had frequent application in this court. To cite a recent case, it defeated the plaintiff in *Roach v. Cox*, 160 Ala. 425, 49 South. 578, an action at law on a promissory note when defendant had been absent from the state and in parts unknown during the time within which suit might have been brought. And in *Snodgrass v. Snodgrass*, 176 Ala. 276, 58 South. 201, another recent case, it was held to defeat a bill seeking to bring the administrator of an agent to account; but that was because more than 20 years had elapsed since defendant's intestate had put an end to his trust by resigning his agency. More recently in the same case (*Snodgrass v. Snodgrass*, 185 Ala. 155, 64 South. 594) the conclusion was that the facts had been misconceived on the first appeal, and then the court reaffirmed the commonly accepted doctrine that, in the absence of special circumstances of "inequity founded upon some change in the condition or relation of the property or the parties," mere lapse of time is without effect upon equitable right or remedy in respect of liability arising out of a trust, as long as there is a recognition of the trust within the prescriptive period.—*First National Bank v. Nelson,*

106 Ala. 535, 18 South. 154; *Montgomery Light Co. v. Lahey,* 121 Ala. 131, 25 South. 1006; *Haney v. Legg,* 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81.

An accounting is a means to an end. If appellant is entitled to redeem at this time, he is entitled to an accounting because appellee, by accepting the pledge, assumed the burden of accounting whenever appellant might rightfully come to redeem. The right to redeem depends upon the nature of the original relation assumed by the parties and the effect upon that relation of the mere lapse of time. Apart from mere lapse of time, appellant's case is clear and free from difficulty. But length of time, where it does not operate as a positive bar by way of limitation, operates simply as evidence of assent to, or acquiescence in, an adverse claim. There is no averment of adverse claim, nor can any be presumed from the inactivity or silence of appellant. The parties were contracting, it is trite to say, with an ultimate view, not to the policy of insurance in and of itself, but with reference to what it would produce in the future. Appellee received the policy "as collateral security" and upon trust that, if the pledge were not sooner redeemed, or a foreclosure in some sort sooner had, he would, upon collection when, due, account to appellant for the proceeds. Since that time neither party has moved; there has not been until recently, so far as we are informed by the bill, the slightest word or act to indicate a change in the relation of the parties. Under the status created in the beginning, neither party was obliged to do anything until the debt in pledge could be reduced to possession. Appellee might have foreclosed, or appellant might have redeemed, at an earlier time, but the mere circumstance of their common failure to exercise their respective options goes to prove nothing one way or the other. There being no presump-

[Keeble v. Jones, et al.]

tion of a breach of trust or contract on one hand, nor of an intention on the other, to abandon the usufruct of property in advance of the time when it could come into possession and enjoyment, the presumption, if we are to proceed on presumption alone, must be that the original status has continued without disturbance.

In appellee's brief appellant's situation has been likened to that of a mortgagee out of possession who seeks to foreclose after 20 years. But the cases are widely different. Appellant is seeking to redeem, not to foreclose, and consideration of the difference between mortgage and pledge, stated at the outset, shows that the pledgor holds a position of better advantage than that of a mortgagor. After forfeiture, the mortgagee has the complete legal title, and his possession, without recognition of the mortgagor's equity, is referred to his legal title, and is adverse to the mortgagor.—*Coyle v. Wilkins*, 57 Ala. 110. In the case of pledge, such as here, the general title remains in the pledgor, there is no forfeiture until the property is applied as security to the payment of the debt secured, and the pledgee is presumed, until the contrary appears, to hold in subordination to the pledgor's title.

For aught appearing, then, the original contract of pledge remains unimpaired, and equity, which "is vigilant and jealous in its circumspection of the conduct of trustees," will execute the trust according to the obligations of its original conception and expression.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and DE GRAFFEN-RIED, JJ., concur.