# Profile Cotton Mills *v.* Calhoun Water Co.

*Bill to Declare a Resulting or Constructive Trust.*

(Decided June 30, 1914. Rehearing denied July 25, 1914. 66 South. 50.)

1. *License; Verbal; Revocation.*—A verbal license to use land is revocable at the pleasure of the licensor, unless a valuable consideration has been paid and possession yielded to the licensee.

2. *Same; Water.*—Incidental benefits that may accrue to a licensor as an officer or stockholder of a corporation, by way of a salary,

cannot be regarded as a valuable consideration precluding such person to revoke a verbal license granted such corporation to take water from his land.

3. *Same; Revocation; Equitable Estoppel.*—A landowner's consent or acquiescence in the use of his land by another under a verbal license raises no equitable estoppel, and may be revoked, notwithstanding the licensee had made expenditures in reliance thereon.

4. *Same; Notes.*—A licensee under a verbal license is entitled to a reasonable notice only to permit him to remove personal property from the land, and is entitled to no notice for other purposes.

5. *Frauds; Statute of; Easement; Grant.*—The right to take water from a reservoir on the lands of another, using a dam to collect it, and laying pipes to carry it away, is an easement rather than a personal license, and is of no effect unless granted by a writing or acquired by prescription.

6. *Trusts; Constructive.*—Wherever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, so that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated.

7. *Injunction; Dissolution; Temporary.*—Where a bill contains equity a respondent has no absolute right to have a dissolution of a temporary injunction on the sworn denials of his answer, and the injunction should be continued if it will do the respondent no harm, and its dissolution might work an irreparable injury to complainant.

8. *Same.*—In determining whether a temporary injunction should be dissolved, the court is not limited to the sworn allegations of the bill, and the sworn denials of the answer, but may consider ex parte affidavits, the courts possessing a sound judicial discretion in the matter.

9. *Same.*—If there is grave doubt as to whether a complainant will prevail on the final hearing of the cause, the temporary injunction should be dissolved.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, Jr.

Bill by the Profile Cotton Mills against the Calhoun Water Company, to establish a license and to declare a resulting or constructive trust. Decree for respondent, and complainant appeals. Affirmed.

The bill seeks to establish a license in favor of complainant for the maintenance of a dam and water pipes upon respondent's land, or to declare a resulting or constructive trust for complainant either in the land

itself or in an easement to draw thereform a water supply for the operation of its cotton mills, and the use of its employees on the land adjoining the tract in question, or else to fasten an estoppel on respondent, with respect to complainant's asserted right in the premises. Respondent's title to the water is derived from one George P. Ide, and as to the matters herein litigated respondent stands in his shoes. The bill shows that Ide acquired the water tract by piecemeal by several distinct purchases from different persons on June 27, 1899, August 17, 1900, and September 25, 1900. It shows also that complainant corporation was organized on August 8, 1900, following a declaration made for that purpose by Ide and two others. Of the 1,000 shares of capital stock 685 shares were owned by residents of New England, about 75 shares by local shareholders, and 238 shares by Ide. The relation of complainant and its interest to Ide and his 10-acre water tract is shown by allegations which may be summarized as follows: (1) By means of the said purchases and conveyances said Ide acquired a tract of land containing altogether about 10 acres, through which flowed the said Spring branch, a water course or stream having its origin in the said public spring in Jacksonville, as aforesaid, and said Ide holding the legal title to said tract of land across said Spring branch, but at the cost and expenses of your orator, of which he was at the time chief executive and managing officer; and he also erected, near by said dam, another dam, across the said Williams branch, with its western abutments upon your orator's land, and its eastern abutments on the land so held by him, as aforesaid. In this way he accumulated upon said land a body or pool of water, above the dam on the said Spring branch, and also by means of the dam on

the Williams branch caused the water therein to be backed or flowed into the Spring branch on said land. And he thereupon laid a pipe line, beginning on his said land and leading from the Spring branch dam a short distance thereon to the middle of the said stream, and thence over and through the lands of your orator to a reservoir, where he accumulated the water from said streams, for the purpose of supplying the boilers, for generating steam for driving the machinery in said cotton mills, and for the purpose of protecting your orator's said property from loss or destruction by fire. Your orator further shows that the said Ide, holding the legal title to said 10-acre tract of land, also erected a pumping house thereon, and laid water pipes from the said spring to the land so held by him, and thence over, upon, or through said land, at the cost and expense of your orator, and thereby secured a water supply for the said cotton mills, for drinking purposes, and for your orator's houses rented or leased to its employees, as aforesaid, for drinking and domestic purposes. Orator charges that all this was done by said George P. Ide for the use and benefit of your orator.

(2) Ide promoted the organization of plaintiff corporation; thereafter he had the sole and exclusive management of its business and finances until 1911, as its alter ego, selected and acquiring its site, and bought and installed its plant, expending therefor several hundred thousand dollars. As manager of the company Ide was charged with the duty of securing an adequate supply of water for the operation of the mills and the use of its employees; he undertook to do so, and in fact acquired the several parcels of land composing the water tract (except a one-third interest in an unimportant parcel) solely for the uses stated.

[Profile Cotton Mills v. Calhoun Water Company.]

(4) The water rights afforded by the Ide water tract were and are indispensably necessary to the use and operation of complainant's plant, and without them its employees and their families, numbering about 900 cannot occupy its houses as provided for them, to the great inconvenience and loss of complainant.

(5) Ide was the only officer or important stockholder on the ground, and the company, including all of its nonresident stockholders, relied entirely upon Ide to provide what was necessary for the construction and the successful operation of its plant.

The bill further shows that complainant's first mill was completed and put in operation in 1905, and that by the action of Ide and the other stockholders in 1907, another mill was constructed and put in operation in 1908, with about $500,000 as additional paid-up stock, which sum was expended by Ide for the company, he retaining the actual management until April, 1911. It is alleged that this mill was built and equipped upon the faith or agreement or understanding between Ide and the company for the use of the water supply from this water tract, and that said mill could not have been, and cannot be, successfully or practically operated without such water supply. On this basis it is charged that Ide and his successors are estopped to deny or interfere with complainant's easement to its present water supply, in the matter of which it has expended large sums of money. It is charged, on information and belief, that the respondent, Calhoun Water Company, is not and does not intend to be engaged in any active business. It is shown that Ide severed his connection with complainant in April, 1911; that he became a bankrupt, and this water tract was sold in May, 1913, and passed to respondent corporation, when it was organized in July, 1913; that in November, 1913,

respondent served a notice on complainant to immediately vacate the water tract in question and remove all of its pipes or other property therefrom, and to discontinue the use thereof, and within about 30 minutes thereafter Ide and the respondents through its servants broke complainant's water connection on said tract, stationed armed guards there, and forbade complainant from entering and repairing said connections. Pursuant to the prayer of the bill a temporary restraining order was made without notice, forbidding respondent from interfering with complainant's restoration of its pipes as formerly used. The answer admits Ide's acquisition of the water tract; that he was active with others in promoting and organizing the complainant company, of which he became secretary and treasurer, and that he permitted the company to use his lands for the procurement of its water supply. It denies that Ide bought the tract for the company, or with any reference to the future location of its plant, as to which another site was then already determined upon; it denies that Ide was ever complainant's alter ego, and avers that the president, vice president, and mill superintendent were active in its control, and that all matters of importance were submitted to and passed upon by the president or board of directors of which he himself was only one member. It denies that it was Ide's legal duty to procure a water supply for the mill. It affirms that complainant's plant was amply supplied with water from its own land exclusively, and had no need for Ide's land until its second mill was built and operated in 1908, and that its responsible officers knew of Ide's private ownership of the water tract when the mills were located and built, and, further, that Ide gave complainant ample opportunity to buy and own the tract at

practically its cost to him.  The answer sets up · many other· circumstances, conditions, and dealings with respect to the Ide tract, with numerous documentary exhibits in denial and rebuttal of · the equities asserted in the bill, and exhibits a letter written complainant on July 12, 1913, by an agent of· respondent, pending negotiations as to complainant's · purchase of the tract, stating: "We must insist upon the matter being closed definitely without further delay.  Either we must have entire control of the property and your use of the water must cease, or we must come to ·some agreement mutually satisfactory."

· No attention was paid to this letter, nor another written in September, 1913; and at a later conference between officers of the two companies complainant's representative declined to purchase or enter into any agreement.  It is admitted that thereafter respondent served notice on complainant and broke its pipes and guarded same against repair as alleged.

Numerous affidavits and documents were submitted pro and con the issues made by bill and answer on motion to dissolve the restraining order for want of equity in the ·bill, and on motion for injunction pendente lite.  The chancellor dissolved the restraining order, and denied the temporary injunction.

WILLETT & WILLETT, JAMES F. MATTHEWS, and W. A. GUNTER, for appellant.

KNOX, ACKER, DIXON & STERNE, for appellee.

SOMERVILLE, J.—The bill of complaint is without equity in so far as it is predicated upon the theory of a license in favor of complainant to use the lands of respondent for a water supply and for the maintenance

of pipe lines therefrom. It is too well settled in this state to permit of further discussion that a verbal license to use land is revocable at the pleasure of the licensor, unless a valuable consideration has moved to him from the licensee.—*Rhodes v. Otis,* 33 Ala. 578, 600, 73 Am. Dec. 439; *Hicks v. Swift Creek Mill Co.,* 133 Ala. 411, 418, 31 South. 947, 57 L. R. A. 720, 91 Am. St. Rep. 38; *Turner v. City of Mobile,* 135 Ala. 73, 127, 33 South. 132.

Incidental benefits that might accrue to the licensee as a salaried officer or stockholder of the licensee company cannot be regarded as a valuable consideration in law or equity which would support the license. Nor does an equitable estoppel arise merely by reason of the land owner's consent to, or acquiescence in the enjoyment of a license or easement, though the licensee has made expenditures in reliance thereon.—*Turner v. City of Mobile,* 135 Ala. 73, 33 South. 132; *Pioneer M. & M. Co. v. Shamblin,* 140 Ala. 486, 37 South. 391; *Lawrence v. Springer,* 49 N. J. Eq. 289. 24 Atl. 933, 31 Am. St. Rep. 702, note, 712.

Moreover, the right here contended for by complainant is in fact a permanent easement, rather than a personal license, and is, under the statute of frauds, of no effect unless granted by a writing, or acquired by prescription.—*Riddle v. Brown,* 20 Ala. 412, 56 Am. Dec. 202; *Hicks v. Swift Creek Mill Co.,* 133 Ala. 411, 419, 31 South. 947, 57 L. R. A. 720, 91 Am. St. Rep. 38 (citing and discussing many authorities).

However, complainant's main reliance for the equity of its bill is upon the theory of a constructive trust in the Ide lands, or in the use of the water rights thereto appurtenant, arising out of Ide's peculiar relations to complainant company and its stockholders and his expressed or implied duty to acquire this water tract

[Profile Cotton Mills v. Calhoun Water Company.]

for the company rather than for himself—this in view of its alleged necessity to the company for the practical and successful operation of its mills.

The principle relied on is: "Whenever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated."—Note to *Keech v. Sandford*, 1 Lead. Cas. in Eq. 53.

This principle, as thus stated, has been fully approved by this court.—*Scottish, etc., Co. v. Dangaix*, 103 Ala. 388, 15 South. 956; *Waller v. Jones*, 107 Ala. 331, 18 South. 277. The principle is, of course, peculiarly applicable to all agencies of trust and confidence, whether they relate to personal, partnership, or corporation affairs. Our analysis of the bill leads to the conclusion that in this aspect it is not wanting in equity.

When the bill contains equity it is not a matter of absolute right in the respondent to have the injunction dissolved on the sworn denials of the answer: "Where, if the defendant's allegations are true, the injunction will do him no harm, and if the plaintiff's allegations are true, a dissolution will involve him in irreparable injury, the injunction will not be dissolved."—*Scholze v. Steiner*, 100 Ala. 148, 14 South. 552. See, also, *Francis v. Gilbreath, etc., Co.*, 180 Ala. 338, 60 South. 919, and cases cited.

Recent statutes, while not impairing the sound judicial discretion of the chancellor in the matter of granting or dissolving a temporary injunction, have

somewhat broadened the scope and aim of the hearing on motion to grant or dissolve, and the conclusion of the court will rest, not upon a consideration merely of the sworn allegations of the bill and the sworn denials of the answer, but upon independent defensive matter as well; and ex parte affidavits may be offered and considered in support of any of the facts in issue. In the consideration of such affidavits courts will not overlook their manifest infirmities as purveyors of truth, and will understand that they may be so framed as to conceal, instead of reveal, the true facts. Nevertheless, for want of something better, our practice sanctions their use, and very clearly contemplates a tentative finding on the facts so shown as a basis for the exercise of a sound judicial discretion in the award or refusal of injunctive relief.—See *Salmon v. Salmon*, 180 Ala. 252, 60 South. 837.

In this connection the rule is thus stated in 5 Pom. Eq. Jur., § 264: "It is not necessary that the court be satisfied that the plaintiff will certainly prevail on the final hearing; 'a profitable right, and a probable danger that such right will be defeated, without special interposition of the court,' is all that need be shown. When there is grave doubt, however, as to the complainant's right, preliminary relief will generally be denied."

In spite of the sworn allegation of the bill, which are to some extent conclusions, and are for the most part made only on information and belief, we concur in the conclusion of the chancellor that there are practically no facts shown by the evidence, which are persuasive of the probable existence of complainant's asserted equities. The doubtful deductions upon which these equities must be grounded, though they are stated

and argued with the utmost forensic ability, are, we think, substantially overthrown · by the documentary and other evidence on file. An argumentative discussion of this evidence, though it might be gratifying to counsel, would be barren of good, to say nothing of its impracticability. It may well be that our tentative view of the case on present showings might be altered by the full development of complainant's case for final hearing on its merits. But such a consummation, while not to be prejudiced, cannot be now anticipated.

. Our substantial concurrence with the chancellor's findings upon the facts leaves no room for the exercise of the discretion usually indulged upon a consideration of the relative injury which may probably result to the opposing litigants from the award or denial of injunctive relief. We feel bound, therefore, to affirm the action of the chancellor in dissolving the restraining order and denying the temporary writ of injunction.

It is urged in behalf of complainant that, even though its interest in the water tract was of no higher grade than a revocable license, yet, being on the land, and having spent several thousand dollars in valuable improvements thereon, it was entitled to reasonable notice of revocation. But the reasonable notice required by law in such cases is only for the purpose of giving the licensee an opportunity for the removal of such personal property as he may be using in connection with the enjoyment of his license. For other purposes no notice is necessary.—25 yc. 652, and cases cited; *Riddle v. Brown*, 20 Ala. 412, 419, 56 Am. Dec. 202. It does not appear that complainant's rights in this regard have been in any way denied.

It results that the decree of the chancery court must be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur.