160 So. 109

## FIRST NAT. BANK OF BIRMINGHAM v. FORMAN.

### 7 Div. 280.

Supreme Court of Alabama.

Feb. 28, 1935.

Rehearing Denied March 28, 1935.

Horace C. Wilkinson, of Birmingham, for appellee.

KNIGHT, Justice.

The bill in this cause was filed by C. B. Forman, appellee, on behalf of himself, and all other stockholders of the Gadsden Ice & Fuel Company, a corporation, "who care to join therein," against the Gadsden Ice & Fuel Company, T. G. Jordan, Otto Agricola, J. R. McCleskey, and the First National Bank of Birmingham.

It is made to appear from the averments of the bill that the said Gadsden Ice & Fuel Company was organized under the laws of the state of Alabama on the 21st day of September, 1923, with an authorized capital stock of $100,000, divided into 1,000 shares. That the original incorporators were the complainant, and J. R. McCleskey, Otto Agricola, and J. H. Lester; each of said parties owning 250 shares of the stock in said corporation.

As originally organized, the officers of the corporation were: J. R. McCleskey, president and general manager; C. B. Forman, vice president; J. H. Lester, treasurer; and Otto Agricola, secretary; and said four named persons constituted the board of directors. Later, the said McCleskey resigned as president and as a member of the board of directors, and the said T. G. Jordan was elected to succeed the said McCleskey, both as president of the corporation, and as a member of the board of directors. Still later, the said C. B. Forman, appellee, owing to ill health retired as a director. This occurred in October, 1929, and at which time Otto Agricola, T. G. Jordan, and J. R. McCleskey were elected directors to serve for the ensuing year; and that in said month of October, 1929, the said T. G. Jordan was elected president, and the said McCleskey and Agricola were elected vice president and secretary, respectively, of said corporation, and have continued in their respective corporate offices since that date to the present time.

No dividends on the stock of the Gadsden Ice & Fuel Company have been paid since the 1st day of September, 1928, and the bill avers

that: "The failure to pay dividends was declared by the officers and directors to be because of business conditions and the inability of the corporation to earn sufficient profits to pay dividends; that complainant accepted said statement as true and relied thereon * * *."

It appears from the bill that the directors and officers of said corporation have been guilty of many wrongs in the management of the affairs of the corporation; that they have paid to Jordan, the president of the corporation, grossly excessive salaries, voting to him a bonus during each of the years 1929, 1930, 1931, 1932, and 1933, to the amount of many thousand dollars, when the condition of the company would not justify it.

It is averred in the bill that in 1929 the complainant borrowed a large sum of money from the First National Bank of Birmingham, and "delivered to the said bank a promissory note evidencing his indebtedness, together with a stock certificate evidencing his ownership of 333⅓ shares of the capital stock of the Gadsden Ice and Fuel Company, 60 shares of stock in the Attalla Bank and to-wit, 120 shares of the capital stock of the First National Bank of Gadsden, Alabama, as collateral security for said loan."

It is further made to appear that the complainant, from time to time, made payments on said note, and that at the time of the filing of the bill the principal sum had been reduced to $28,500.

It is also averred in the bill: "That during the period of time the bank has held said note and said stock, it has been familiar with the conditions and affairs of the Gadsden Ice and Fuel Company; that it learned of the wrongful, illegal and fraudulent acts of T. G. Jordan, Otto Agricola and J. R. McCleskey herein complained of *several months* ago, and failed or neglected to inform complainant of said situation or to disclose any information about the same to complainant and failed and neglected to take any steps or action to protect complainant's rights under his said 333⅓ shares of stock held by it as collateral security, and neglected and failed to *take any steps towards* recovering the amount said stock was entitled to receive as dividends from the Gadsden Ice and Fuel Company, when appropriate action on its part would have resulted in a dividend on said stock approximately equal to complainant's indebtedness to said bank. And complainant further avers that said bank has recently conspired or colluded with the said Otto Agricola, or the said T. G. Jordan, or both of them, to cause complain-

ant to lose his said 333⅓ shares of stock held by said bank as collateral security, and has agreed with them in acquiring said stock, either by foreclosing its pledge on said stock, in such way as that they may purchase it for the amount of complainant's debt, or by a sale of complainant's said note with stock attached, so they can foreclose the same and purchase it, although appropriate action on its part would have long since resulted in said bank having been paid or practically paid its indebtedness, and said stock being saved for complainant. And complainant is informed and believes and therefore charges and states on such information and belief that the said T. G. Jordan or the said Otto Agricola, or both of them, are now arranging to acquire, and that they, or one of them, will acquire said 333⅓ shares of stock pledged by complainant to said bank as collateral from said bank, unless restrained from so doing by an appropriate order of this court."

In paragraph 19 of the bill it is averred: "Complainant further avers that he is advised, informed and believes and on such advice, information and belief charges and states that the First National Bank of Birmingham, Alabama, is colluding with the said T. G. Jordan, and said Otto Agricola to enable them to acquire complainant's stock in the Gadsden Ice and Fuel Company, in an effort to coerce complainant in abandoning his claim against the Gadsden Ice and Fuel Company, the said T. G. Jordan, the said Otto Agricola and the said J. R. McCleskey, or to force him to dispose of his stock in the Gadsden Ice and Fuel Company for a sum greatly less than its value."

The prayer of the bill, among other things, was for a decree directing the said Jordan, Agricola, and McCleskey to restore to the corporate treasury of the said Gadsden Ice & Fuel Company the moneys wrongfully paid out or appropriated by them; that a lien be decreed upon their stock to secure the payment of said money, and the stock sold to satisfy the said lien; "that the court will order that, upon said sum being paid into the corporate treasury, it be immediately disbursed to the stockholders of said corporation as a dividend on their holdings in said corporation, and the sum paid on complainant's stock as a dividend be paid over to the First National Bank of Birmingham, Alabama, and by it credited upon complainant's indebtedness to said bank, and if the amount thereof does not equal or exceed the amount of complainant's indebtedness to said bank, that complainant be allowed to pay the balance due, and

redeem his said stock." "And the complainant submits himself to the jurisdiction of the court, and offers to do equity towards all parties respondent to this bill * * *."

The judge of the circuit court, on presentation to him of this bill, which was duly sworn to, granted a temporary injunction as prayed, enjoining and restraining the First National Bank of Birmingham from disposing of the 333⅓ shares of stock of the Gadsden Ice & Fuel Company issued to the complainant, and by him pledged to the said bank, until the further orders of the court. The court also granted a temporary injunction against the Gadsden Ice & Fuel Company, its officers, agents, attorneys, and employees, from paying to the said T. G. Jordan any sums of money until the further orders of the court, and also directed the issuance of a temporary injunction restraining the said T. G. Jordan, Otto Agricola, and J. R. McCleskey, and each of them, from acquiring the said 333⅓ shares of stock of the Gadsden Ice & Fuel Company, issued to the complainant.

The First National Bank of Birmingham duly appeared, and demurred to the bill of complaint, and "to each paragraph thereof, separately and severally," and also filed answer to the bill, and moved the court to dissolve the injunction issued against it.

The particular grounds of the motion here insisted upon are (1) that there is no equity in the bill, and (2) the denials of the answer.

The court, on submission on demurrer and motion of the First National Bank of Birmingham, overruled the demurrer and also the motion to dissolve the injunction issued against the bank. From this decree, which was rendered after notice, the present appeal is prosecuted.

On this appeal, we are only concerned with the bill as it affects the rights of the appellant the First National Bank of Birmingham and Dr. Forman.

We entertain no doubt of the equity of the bill as against the respondents the Gadsden Ice & Fuel Company, T. G. Jordan, Otto Agricola, and J. R. McCleskey.

■ A court of equity will assume jurisdiction at the suit of a stockholder to correct abuses in the corporate management by the board of directors, whether the abuse consists in improperly increasing their own salaries and those of their confederates, either as directors or as officers of the corporation, or by way of appropriating the assets to the payment of their own liabilities, whether under the guise of a loan or otherwise. Glass et al.

v. Stamps et al., 213 Ala. 95, 104 So. 237; Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 21 So. 315, 59 Am. St. Rep. 140; Henry v. Ide, 208 Ala. 33, 93 So. 860. "Ordinarily, an appeal should first be made to the governing board to redress wrongs to the corporation, but, when the bill, as here, shows that the wrongs complained of are those of said governing board, no such demand or request need be made or shown as a condition precedent to the maintenance of a bill for equitable relief." Glass et al. v. Stamps, supra.

In the case of Ellis v. Vandergrift, 173 Ala. 142, 55 So. 781, 784, it was observed: "No demand or request of the corporate authorities is required to be made, as a condition to suit by the stockholder, where it can be inferred with reasonable certainty that it would be refused, actually or virtually, or where, being the wrongdoers, a majority of the governing body would control the litigation so requested or demanded."

■ The bill, among other corporate wrongs, charges the directors with paying an exorbitant and grossly excessive yearly salary to T. G. Jordan, since 1928 and up to the present time, as the president of the corporation, and voting to him each year a large bonus; the first bonus being in the sum of $3,000, and since 1929 a yearly bonus of $5,000. That it has paid during said years no dividends to the stockholders. To correct such abuses, if, in fact, they exist, or have existed, we are clear a court of equity will assume jurisdiction, and we are equally clear that, under the averments of the bill, an appeal to the corporate board for redress would have been unavailing.

■ As indicated heretofore, the demurrer of the First National Bank of Birmingham is addressed to the bill of complaint, and to each paragraph thereof separately and severally. We have, in a long line of decisions, held that such a demurrer goes to the bill as a whole, and not to its different aspects, and that if the bill in any aspect contained equity, the demurrer should be overruled. Wood et al. v. Estes, 224 Ala. 140, 139 So. 331; City of Anniston v. Anniston Office Building Co., 227 Ala. 180, 149 So. 93; Hayes et al. v. Betts, 227 Ala. 630, 151 So. 692; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413.

As against the appellant the First National Bank of Birmingham, does the bill, in any of its aspects, contain equity?

■ We are of the opinion that, as a pledgee of the stock of Dr. Forman, a duty would have rested upon the First National Bank of Birmingham to collect any dividends actually

190

declared by the Gadsden Ice & Fuel Company on the stock held by it, and to apply any such dividends to the payment, pro tanto, of Dr. Forman's indebtedness to the bank, or to hold them as trustee for the pledgor. Guarantee Co. of N. A. v. East Rome Town Co., 96 Ga. 511, 23 S. E. 503, 51 Am. St. Rep. 150; Colebrook on Collateral Securities, §§ 100, 270; Jones on Pledges, § 398; 7 R. C. L. § 268, p. 293; Gemmell v. Davis, 75 Md. 546, 23 A. 1032, 32 Am. St. Rep. 412; National Bank of Commerce v. Equitable Trust, 142 C. C. A. 158, 227 F. 526; McAulay v. Moody, 128 Cal. 202, 60 P. 778; Union Trust Co. v. Hasseltine, 200 Mass. 414, 86 N. E. 777, 16 Ann. Cas. 123; Merchant's Nat. Bank v. Richards, 74 Mo. 77; H. J. Whetsel v. Wm. S. Forgey et al., 323 Mo. 681, 20 S.W.(2d) 523, 67 A. L. R. 476; Farmers'. & Merchants' National Bank v. Mosher, 63 Neb. 130, 88 N. W. 552; Brightson v. Claflin, 225 N. Y. 469, 122 N. E. 458; Maxwell v. National Bank, 70 S. C. 532, 50 S. E. 195, 3 Ann. Cas. 723; Fulton v. National Bank, 26 Tex. Civ. App. 115, 62 S. W. 84.

The bill, however, shows that no dividends were in fact declared, but it is insisted that it was the duty of the pledgee of the stock, the First National Bank, to institute proper legal proceedings to require the Gadsden Ice & Fuel Company to desist from dissipating the assets of the company in the payment of excessive salaries, and in granting bonuses to one of its officers, to wit, the president, Mr. Jordan. This aspect of the bill presents quite a different question. It is one thing to collect a dividend already declared, but quite a different one from assuming the burden of a litigation involving the charging and proof of bad faith, breach of trust, and fraud to the corporation, its officers and directors, with its consequent cost and expense, in order to force the corporation and its directors to declare a dividend.

Counsel has pointed us to no adjudged case holding that such a duty is cast upon the pledgee of stock by the act of taking over the stock as collateral security for a debt. We do not mean to say that there is no such case, but counsel has not cited us to any such, and diligent effort and a thorough search by us have disclosed no such holding.

■ The utmost duty required of the pledgee, with reference to the collection of collaterals, is ordinary diligence; and in 9 Corpus Juris, p. 1023, § 300, it is observed that "ordinary diligence" has been defined "as that of an ordinarily prudent man in the conduct of his own business, as that required of a bailee for hire, and as that of an agent or attorney.

*The pledgee is not charged with the active duty of watching the movements of the debtor, with a view to forestalling or frustrating any attempt at fraud on his part. Extraordinary diligence is not required of the pledgee, and having exercised ordinary diligence, he is not responsible for any loss through failure to enforce the collateral, even though he could have prevented such loss by the exercise of extraordinary care and diligence.*" (Italics supplied.)

■ Nor is the pledgee under duty, in the absence of a positive agreement to that end, to sue, where suit might involve him in loss and expense. Rice v. Benedict, 19 Mich. 132; 49 Corpus Juris, § 301, p. 1024.

In the case of Sampson v. Fox, 109 Ala. 662, 19 So. 896, 55 Am. St. Rep. 950, in which certain collateral was pledged to secure a note, under a pledge agreement in the following words: "And I hereby give to the holder full power and authority to sell or collect, at my expense, all or any portion thereof, at any place, either in the city of Tuscumbia or elsewhere, at public or private sale, at his option, on nonperformance of above promise," it was insisted by the pledgor that the banking company, pledgee, by its failure to collect the debt of the Electric Light & Water Company (one of the securities pledged) suffering the company to sell and dispose of all of its property and franchises, whereby the debt was lost, was answerable to the pledgor for the loss. This court, in an opinion by Brickell, Chief Justice, said: "There was authority to collect the collateral. At the utmost this would devolve on the holder of the notes the *duty and liability of an agent*, and, as an agent, binding him only to *ordinary care and diligence.* It is apparent that, by the exercise of no ordinary diligence, the pursuit of no ordinary legal remedies, there could have been collection of the collateral. * * * If it is suggested that equitable remedies could have been pursued to reach and subject the property conveyed to the water company, the answer is that such remedies as are extraordinary the holder could not be expected to pursue." (Italics supplied.)

This court in the Sampson Case, supra, thus committed itself to the proposition that the pledgee, in the absence of contract to that end, would not be required to resort to extraordinary remedies to enforce payment of collaterals.

■ The bill avers "that in the note evidencing his indebtedness to said bank and pledg-

ing his stock as collateral security for said indebtedness, there is a provision authorizing said bank to take any necessary steps to protect said collateral." This authorization cannot be construed as requiring the pledgee to resort to extraordinary remedies, involving the charging and proof of fraud against the corporation and its directors, with the possibilities of failure, and the incurring of heavy cost and expense. At the most, the pledgee under the terms of the pledge contract was to exercise ordinary care and diligence, and no more. Such duty did not require a resort to extraordinary remedies. And it is quite certain that ordinary remedies would have been unavailing.

There is no equity in this feature of the bill as presented.

The averments of paragraph 19 of the bill present appellee's case in another and different aspect. It is there averred that the First National Bank of Birmingham "is colluding with the said T. G. Jordan, and the said Otto Agricola to enable them to acquire complainant's stock in the Gadsden Ice and Fuel Company, *in an effort to coerce complainant into abandoning his claim against the Gadsden Ice and Fuel Company, the said T. G. Jordan, the said Otto Agricola and the said J. R. McCleskey, or to force him to dispose of his stock in the Gadsden Ice and Fuel Company for a sum greatly less than its value.*" (Italics supplied.)

These averments, on demurrer, must be taken as true.

In the case of Keeble v. Jones, 187 Ala. 207, 65 So. 384, 386, it was observed: "While the law of pledges falls under the head of bailment at common law rather than under any general doctrine of equity, courts of equity have been accustomed to take cognizance of cases arising out of the collateral assignment of securities upon acknowledged grounds of equitable jurisdiction. In that jurisdiction, for just reasons arising out of the contract and the status of possession created by the acts of the parties, the pledgee is considered to hold as a trustee for the joint account of himself and the pledgor. Joliet Iron & Steel Co. v. Scioto Fire Brick Co., 82 Ill. 548, 25 Am. Rep. 341."

The court then quotes approvingly the following statement of the law: " 'Responsibilities of the pledgee to the pledgor are similar to those of a trustee, first, to collect and apply the securities at their maturity to the payment of the debt, in the case of promissory notes and bills of exchange, though sale may be made where the collateral securities are long-time negotiable bonds; and, secondly, to pay over the surplus, if any, to the pledgor. The pledgee is also likened to a trustee, as he may not deal with the trust property so as to destroy or impair its value.' Colebrooke, Coll. Secur., § 87."

In the case of Crowson v. Cody et al., 209 Ala. 674, 96 So. 875, 877, this court, speaking through Somerville, J., observed: "The relation between a pledgor and his pledgee is certainly one of trust, and as to all dealings with the pledged property the pledgee is regarded as a trustee, and is accountable accordingly. Keeble v. Jones, 187 Ala. 207, 65 So. 384; Hicks v. Dowdy, 202 Ala. 535, 81 So. 37."

In the case of American-Traders' National Bank et al. v. Henderson, 222 Ala. 426, 133 So. 36, 39, it was observed of the rights of a pledgor to resort to a court of equity for redemption of the pledged property: "It is * * * well settled that a pledgor may invoke the aid of a court of equity to redeem the property pledged, and have an accounting as an incident to his right to redeem. The principles applicable are fully stated in Keeble v. Jones, 187 Ala. 207; 65 So. 384."

But whether a bill in equity will lie on behalf of the pledgor, without some special ground to equitable relief, we are not concerned, as the bill does bring forward, as we shall undertake to show, a special ground for equitable cognizance in connection with his prayer for redemption, and therefore the bill will lie. Hicks et al. v. Dowdy, 202 Ala. 535, 81 So. 37; Nelson v. Owen, 113 Ala. 372, 376, 21 So. 75, 76; Crowson v. Cody et al., 207 Ala. 476, 93 So. 420.

The power to sell the pledged securities, like the power of sale in a mortgage, is conferred upon the pledgee for the purpose, and sole purpose, of enabling the pledgee to enforce payment of the indebtedness due from the pledgor to the pledgee. It cannot be converted into an instrument of oppression or torture. And whenever one clothed with this power attempts to use it for purposes of gaining some unjust or unconscionable advantage, either for himself or for another, it is a perversion of the power, and a court of equity, when its aid is properly invoked, will not hesitate to intervene, and prevent such use of the power. In this respect, exercise of the power of sale of pledged property is no different from a similar exercise of the power of sale in a mortgage.

In the case of Castleman v. Knight, 215 Ala. 429, 110 So. 911, 912, it was observed:

"The equity of the bill may be rested upon the well-recognized jurisdiction of a court of equity to prevent a perversion of the power of sale in a mortgage from its legitimate purpose to that of oppression of the debtor and to purposes foreign to that for which it was intended. The following quotation containing the principle here controlling has found frequent repetition in our subsequent decisions:

"'The legitimate purpose, for which the power to sell in this defendant's mortgage deed was given, was to secure him repayment of his mortgage money. If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, *or to serve the purposes of other individuals*, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended.' Struve v. Childs, 63 Ala. 473; Security Loan Ass'n v. Lake, 69 Ala. 456; Henderson, etc., Co. v. Wilson, 161 Ala. 504, 49 So. 845; McCalley v. Otey, 90 Ala. 302, 8 So. 157; Caldwell v. Caldwell, 166 Ala. 406, 52 So. 323, 139 Am. St. Rep. 48; Marsh v. Elba Bank & Trust Co., 207 Ala. 553, 93 So. 604; Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963." (Italics supplied.)

This same equitable principle was reaffirmed and applied in our recent case of Moseley v. Ritter et al., 226 Ala. 673, 148 So. 139.

What is held with reference to the perversion of the power of sale contained in a mortgage applies with like force to the sale of pledged property.

In paragraph 19 of the bill of complaint now before us it is specifically averred: "That the First National Bank of Birmingham is colluding with the said T. G. Jordan, and said Otto Agricola to enable them to acquire complainant's stock in the Gadsden Ice and Fuel Company, *in an effort to coerce* complainant into abandoning his claim against the Gadsden Ice and Fuel Company, the said T. G. Jordan, the said Otto Agricola and the said J. R. McCleskey, *or to force him to dispose of his stock in the Gadsden Ice and Fuel Company for a sum greatly less than its value.*" (Italics supplied.)

Under the averments of the bill, the complainant has a claim against said parties for the wrongful expenditure or appropriation of the assets of the said Gadsden Ice & Fuel Company, and any effort on the part of the pledgee of complainant's stock to use the power of sale of said stock, under the pledge agreement, to force complainant to waive or forego the enforcement of his demand against said parties, or any one of them, or to enable said parties, or either of them, to obtain an unjust advantage of the complainant, would be a perversion of the power of sale of said stock under the pledge agreement, and a court of equity, when its powers are timely and properly invoked, will not sit idly by and permit it to be done. In this aspect the bill, in so far as it involves the First National Bank of Birmingham, contains equity. This equity fully justified the complainant in resorting to the court for relief, and for redemption of the pledged property.

We think the complainant's offer, in respect to the assertion of his right to redeem, sufficient, when considered in connection with the averment that he "submits himself to the jurisdiction of the court, and offers to do equity towards all parties respondent to this bill."

There is no merit in the contention that the bill is multifarious. Glass et al. v. Stamps et al., 213 Ala. 95, 104 So. 237; Code, § 6526.

This, then, brings us down to the consideration of the question of whether the court committed error in denying the motion of the First National Bank of Birmingham to dissolve the injunction, upon the denials of its answer.

On motion to dissolve an injunction, even when the answer contains a full and complete denial of the material allegations of the bill, the court "is invested with a wide latitude of discretion in acting on such cases. It will especially weigh the relative degree of injury or benefit to the parties which may ensue from the maintenance of the injunction on the one hand, or its dissolution on the other; and, if the continuance of the writ will probably cause less injustice and inconvenience to the defendant than its dissolution will to the complainant, the court, upon balancing the question of relative damage, always feels at liberty to exercise its discretion, in furtherance of justice, by maintaining the injunction, especially where the discretion of the lower court, which is entitled to great respect, has been apparently exercised without abuse. Where irreparable mischief to the complainant will be likely to follow from a dissolution, the appellate court always feels authorized to allow a special injunction to remain in force until a final hearing can be had on the merits." Harrison v. Yerby, 87 Ala. 185, 6 So. 3; Fleming v. Bryars, 227 Ala. 660, 151 So. 846; Profile Cotton Mills v.

Calhoun Water Co., 189 Ala. 181, 66 So. 50; Holcomb et al. v. Forsyth, 216 Ala. 486, 113 So. 516.

We cannot affirm that the circuit court abused its discretionary power in not dissolving the injunction on the sworn denials of the answer of the First National Bank of Birmingham, appellant.

It follows that the decree of the circuit court is due to be, and is here, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.